399 So.2d 657 (1981)
Herman PAGE
v.
PRESTRESSED CONCRETE COMPANY and Highlands Insurance Company.
No. 14135.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*658 Wayne H. Carlton, Jr. and Orlando G. Bendana, New Orleans, for plaintiff-appellant.
Lawrence J. Ernst, New Orleans, for defendants-appellees.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The issues presented are whether or not the plaintiff-appellant has proven any work-related injury or disease and whether or not the disease rendered him partially disabled. The facts giving rise to the litigation are as follows.
Plaintiff-appellant Herman Page was employed as a laborer by Prestressed Concrete Company (Prestressed) from March 1968 to March 1977. During this time he worked in the "girder" area and his duties consisted of dismantling concrete forms from their molds and then buffing or using steel wool to clean the molds. Mr. Page testified at trial he had no difficulty breathing prior to his employment at Prestressed but in 1974 he required hospitalization[1] for severe coughing and wheezing. Mr. Page required no further hospitalization or medical treatment and quit his job at Prestressed in March of 1977. He told his supervisors and co-workers he was quitting in order to go into business for himself. He made no mention of his breathing problem being the reason for the termination. Several months later Mr. Page filed suit against Prestressed and its insurer, Highlands Insurance Company, alleging he was totally and permanently disabled by his "underlined asthmatic condition" which was aggravated by his employment at Prestressed and by the "pneumocomiosis" which he contracted as a result of his employment. Plaintiff attributed his breathing problems to the concrete dust he inhaled as he cleaned the molds.
After a trial on the merits, the trial court found in favor of the defendants and dismissed plaintiff's case. In written reasons the court concluded plaintiff had failed to prove he was even partially disabled[2] by any work-related injury or disease. The court noted La.R.S. 23:1221(3) defined an employee as being partially disabled when he was unable to perform the duties in which he was customarily engaged or duties of the same or similar character for which he was fitted by education, training and experience. The court observed that although Mr. Page may have been unable to work in dust-filled environments, he was a general laborer by experience and no evidence was presented showing he was unable to participate in the general labor market.
Although we agree with the trial court's conclusion that the plaintiff has failed to prove partial disability, we need not elaborate upon that issue. We find plaintiff has failed to prove the first element required for recovery, i.e., he has failed to prove his disease was caused by conditions characteristic of his employment, as required by La.R.S. 23:1031.1. We therefore affirm the trial court's dismissal of plaintiff's suit.
In order to recover benefits for an occupational disease an employee must prove he contracted the disease during the course of his employment and the disease was the result of the nature of the work performed. Bates v. Bituminous Casualty Corporation, 266 So.2d 556 (La.App.3d Cir. 1972). Occupational disease is defined in La.R.S. 23:1031.1(B) as follows:
"An occupational disease shall mean only that disease or illness which is due to *659 causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease."
In their treatise on Workers' Compensation Law, Professors Wex S. Malone and H. Alston Johnson, III note there are several possible interpretations to the terms "characteristic of and peculiar to." The treatise states at page 464:
"... Another interpretation, considerably broader, would simply require that the claimant single out his disease as having been caused by conditions and causes present in his employment and not by other causes to which he and all the rest of us might have been exposed."
Malone and Johnson, Workers' Compensation Law and Practice, § 220 (1980). The text continues to note the primary concern of the Act is to assure work-related diseases are compensated and diseases not caused by employment conditions are excluded from coverage. The concept behind the occupational disease coverage is that when the claimant has proven there is a relationship between the employment and his disease it is only fair that the employment enterprise should bear the cost of his disability.
After carefully examining the record we conclude plaintiff has failed to "single out his disease as having been caused by conditions and causes present in his employment and not by other causes to which he and all the rest of us might have been exposed." We so conclude because even the testimony most favorable to plaintiff's position, that of his treating physician, Dr. George Riser, was inconclusive as to whether or not Mr. Page's condition was caused solely or primarily by the cement dust. (This testimony will be discussed in more detail below).
The record indicates Mr. Page smoked four to five packs of cigarettes a week prior to the time he developed breathing problems and then reduced to three to four packs a week. He continues to smoke today. All of the medical experts (including Dr. Riser) agreed that cigarette smoking was extremely detrimental to anyone having breathing difficulties. It is well settled that not only must the plaintiff establish his claim by a preponderance of the evidence, but the claim will be rejected when there are other possible causes of the disease not related to the employment. Bryant v. Magnolia Garment Company, Inc., 307 So.2d 395 (La.App. 2d Cir. 1975). We feel it would be unfair to burden the employer, Prestressed, with the compensation of this disease when it is readily admitted by all that the smoking is at least partially responsible for the condition. Certainly if the medical evidence had shown the majority of the disease was cause by the cement dust, and the smoking only aggravated the condition, we could hold differently. But no such testimony was adduced.
A brief summation of the pertinent testimony presented at trial will illustrate plaintiff has simply failed to show the disease was more likely than not caused by the work conditions. Three medical experts were called by the defendants. Dr. Patrick Hunter, general surgeon, testified he treated Mr. Page on September 15, 1974 at the emergency room of the St. Tammany Parish Hospital. He diagnosed Mr. Page as suffering from acute bronchitis and stated he believed the bronchitis was caused by bacteria rather than by an allergy to a foreign substance. He treated Mr. Page with an antibiotic and noted Mr. Page's fever was an additional indication that the bronchitis was infectious in nature rather than being of the type caused by inhalation of irritants.
Dr. Rodney Reed, a doctor specializing in internal medicine, testified he treated Mr. Page at East Jefferson Hospital on September 17, 1974. He stated Mr. Page had symptoms of asthma and after being admitted to the hospital responded to a treatment that indicated he had obstructive pulmonary disease (of which asthma is a type). Dr. Reed instructed Mr. Page to stop smoking and stated he would advise a person suffering from this disorder not to work in dusty environments. He opined that if the disease had been caused by the dust it would have recurred more frequently during Mr. Page's employment at Prestressed.
*660 Dr. Edward Hyman, another doctor of internal medicine who treats many patients with pulmonary disorders, examined plaintiff in December of 1977. He found no significant impairment of the lung function and found Mr. Page to be suffering from asthmatic bronchitis which he described as a chronic condition fed from above by a postnasal drip. He stated the condition was highly treatable with antibiotics. When asked if he thought the disease was caused by the dust at Prestressed he said, "I see no reason to be concerned about that exposure. I think that his entire illness is a natural illness, and again I add, in my opinion, undertreated." He stated in order for dust to have caused this condition there would have had to have been an intense exposure to the dust. Since Mr. Page worked outdoors Dr. Hyman felt the intensity of the dust could not have caused any significant aggravation. He noted the intensity of the cement dust, outdoors, did not approach the intensity of the thickness of the cigarette smoke.
Plaintiff's medical expert, Dr. George Riser, began treating plaintiff in May of 1978.[3] At that time he diagnosed Mr. Page as having bronchitis and an occupational exposure to dust. He treated Mr. Page by prescribing various drugs and recommended he stop smoking. (Dr. Riser's notes reflect Mr. Page cut down, but did not quit smoking). Mr. Page's condition continued to improve over the years with only one bad spell in September of 1979. Dr. Riser stated he believed this case of bronchitis to be caused by contaminants in the air rather than by an infection. He stated there were two possible causescigarette smoking and inhalation of the dust. We quote from the deposition.
"Q. Would you say that Herman Page has industrial bronchitis?
A. There's a possibility.
Q. Would you say that there's a probability?
A. Probability, yes. Or that he has some element of his bronchitis has been contributed to by dust exposure. How much, I couldn't say. (Emphasis added.)
Q. But it's certainly without any question an aggravating factor in this case?
A. Yes, or it can be, you knowyes."
When questioned more closely by plaintiff's attorney about the cigarette smoking, Dr. Riser testified as follows:
"Q. What do you think is the cause of his chronic bronchitis?
A. I think there's too (sic) possible causes. One is the cigarette smoking, and two is the exposure that he's had to dust in the past.
Q. Would these things be joint causes of his problems, Doctor?
A. That's a possibilityprobability.
Q. All right, so it is your opinion that it is a medical probability that these two factors together have caused his chronic bronchitis.
A. Correct.
Q. Doctor, will exposure to cement dust cause chronic bronchitis?
A. If it's to the extentyes,, it can. It can.
Q. And exposure to cement dust in conjunction with smoking, will that cause chronic bronchitis?
A. Yes.
Q. Will it be more likely to cause chronic bronchitis in an individual who smokes?
A. You mean if they smoke and are exposed to
Q. And have dust exposure.
A. Repeatedly exposed to dust, I would think it would.
Q. Now, would the cement dust exposure also aggravate the chronic bronchitis
A. It could.

*661 Q. in an individual?
A. It could.
Q. And could it makes symptoms of the chronicwill it make symptoms of the chronic bronchitis worse?
A. It could.
Q. And will the cement dust exposure precipitate the onset of symptoms of chronic bronchitis? (Emphasis added.)
A. That's hard to answer. I don't think it would precipitate it. I mean, it might contribute to it, but I don't know whether precipitate I could go along with that." (Emphasis added.)
We conclude the medical testimony, when considered as a whole, does not sufficiently establish that the plaintiff's difficulties were caused by the dust at Prestressed. Even in situations where the testimony is evenly balanced (for each side) the plaintiff has failed in his burden of proof because his evidence must preponderate. Likewise, the plaintiff must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974); Blacher v. Matlack, Inc., 349 So.2d 916 (La.App. 1st Cir. 1977), writ refused 1977.
The lay testimony presented at trial also failed to establish plaintiff's claim. In the pretrial order Mr. Page claimed he was forced to leave his job at Prestressed due to his breathing difficulties. Yet several co-workers and supervisors testified at trial Mr. Page told them he was leaving Prestressed to go into work for himself and never mentioned his breathing problems as a reason for quitting his job. There is no evidence at all to substantiate his claim. Even Mr. Page conceded his breathing problems were not the cause of his quitting. He testified as follows:
"Q. Alright, now, at the time you left Prestressed Concrete Company, you left because you went to get another job, you wanted to have, wanted to get a job paying more money, didn't you?
A. I left because I say I left because I was going to try to get me a job doing work for myself when I left there.
Q. When you left Prestressed Concrete Company, it wasn't because you couldn't do the work, was it?
A. I didn't say that, did I? I didn't say that?"
The testimony continued in this fashion as Mr. Page repeated that he had never said he was leaving Prestressed because of his health.
In light of the above testimony, both medical and lay, we conclude the plaintiff has failed to prove by a preponderance of the evidence his breathing difficulties were caused by the cement dust at Prestressed. Without this causal connection there can be no recovery. Therefore we affirm the judgment of the trial court dismissing the suit. Appellant is to pay all costs of these proceedings.
AFFIRMED.
NOTES
[1] He received treatment in the emergency room at St. Tammany Parish hospital on September 15, 1974. He went to East Jefferson Hospital emergency room on September 17, 1974 and was then admitted to the hospital.
[2] On appeal plaintiff has abandoned his claim for total disability and claims only that he is partially disabled.
[3] At a later point in his deposition he indicated he may have seen plaintiff in September of 1977 but it seems the records he refers to begin in May of 1978. Apparently plaintiff did not require any medical treatment from September 1974 until he began seeing Dr. Riser.