447 So.2d 26 (1984)
William DUNCKELMAN
v.
T. BAKER SMITH & SONS, INC. and the Travelers Insurance Companies.
No. 83-CA-0332.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Cleveland J. Marcel, Jr., Houma, for plaintiff and appellant.
Philip J. McMahon and Rudolph D. Hargis, Jr., Houma, for defendants and appellees.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
After a tortuous and confusing procedural journey to judgment, certainly not worth retelling here,[1] this case comes before this court a second time, where we hope to end its sojourn by a decision on the merits.
The plaintiff, William Dunckelman, contends he contracted toxoplasmosis, a rare blood disease allegedly rendering him permanently and partially disabled, on May 25, 1977, while working for the defendant, T. Baker Smith & Sons, Inc., as a chairman on a crew surveying certain swampy areas around Gonzales, Louisiana. In his reasons for judgment, the trial judge found that plaintiff failed to establish a causal relationship between the disease and plaintiff's unemployment, and accordingly rendered judgment in favor of defendants. In this appeal, plaintiff argues that the trial court's finding is erroneous. The sole issue then is whether plaintiff proved a *27 work-related injury or disability.[2] We find that he did not and therefore affirm the judgment.
Plaintiff's evidence, tending to establish the occurrence of a work-related injury or disability, on which the trial judge based his finding, consists solely of the two following stipulations and the deposition testimony of plaintiff's treating physician, Dr. Joseph P. Rumage:
1. That on May 25th, 1977 and at all times pertinent thereto, William Dunckelman was employed by T. Baker Smith and Sons, Inc. at a wage of $2.75 per hour as a chainman with a survey crew and during that periot [sic] of time, he, along with his crew, was employed on a job in Gonzales, La., which required him to go into the marsh or swamp.
2. That the work that he was doing was classified as hazordous [sic] under the act.
According to the deposition taken on May 31, 1978, Dr. Rumage, as of that date, was Associate Professor of Ophthalmology at Tulane Medical School and was rendering professional services for the State Bureau of the Blind at its visual aid clinic. He was accepted as an expert on toxoplasmosis without objection. He first examined the plaintiff at the clinic in January 1975. His examination revealed a visual acuity of 20/40 in the plaintiff's right eye and 20/200 in his left, with correcting lenses. He discovered congenital myopia, or nearsightedness with astigmatism, and some scarring of the retinas in both eyes. Following standard Bureau procedures, he next examined plaintiff some two years later on February 3, 1977, and found no significant changes in plaintiff's diagnosis.
Plaintiff returned to the clinic on May 27, 1977, complaining of irritation in his right eye. Dr. Rumage's examination revealed that plaintiff was suffering from a cold, and that the retinal scars discovered in 1975 had become inflammed, swollen and congested. The visual acuity of the right eye was reduced to 20/100. Alerted by the inflammation to a possible fungal infection, Dr. Rumage ordered a blood test, which revealed the presence of toxoplasmosis, a rare fungal disease endemic to warm, moist swampy regions, such as those found in the lower Mississippi River Valley.
Dr. Rumage testified that the fungus is usually transmitted by wild animals through their fecal deposits, so that any exposure to regions populated with wild animals could result in contraction of the disease. The disease is also found in butcher shops, where infected meat from slaughtered cattle is distributed. As with malaria, the infecting agents can never be eliminated from the body, and if the body's resistance is lowered because of overexertion or environmental conditions, relapses of inflammation of the weaker organs, such as the eyes or lungs, may occur.
Dr. Rumage could not establish precisely when or where plaintiff contracted the disease. He said that plaintiff told him that he had been treated for a similar eye irritation in 1973 by a Dr. Bourgeois in Houma and had been hospitalized for that condition for five days. Dr. Rumage never spoke with Dr. Bourgeois, nor does his testimony indicate whether he ever examined plaintiff's medical records from that time, yet he concluded that plaintiff's eye irritation in 1973 was probably not caused by toxoplasmosis because the treatment, which he understood they gave him, did not include the drug Daraprim, specifically used to treat toxoplasmosis. The record does not disclose where Dr. Rumage acquired this understanding. He did testify however that toxoplasmosis could have caused the scarring found in 1975.
The following dialogue between Dr. Rumage and plaintiff's counsel is instructive:
Q Is there any way for you to know whether this toxoplasmosis that he has now, that he had it when he first came *28 to you or he had it before, or is there any way for you to know?
A No exact way, unlessunless certain tests were taken in 1973.
Q These tests were not taken?
A I figured that.
Q So, if
A It would be an assumption.
Q Okay.
A The assumption would be there.
Q Okay. Based on what you know, and there are no previous tests that I know of, but based on what you know, if you assume that in his job, working on a survey crew, that he went out in the swamps and got in the water, and was in close contact with rodent feces, and things like this, from nutrias, could you say there was a medical certainty or medical probability that this is where he contracted the toxoplasmosis?
A I would say it would be a medical probability.
Q Would you say it's more possible than not, that he did get it from the water and soil and feces?
A Yes, because it is known that this all these agents doare present in animal reservoir.
Continuing,
Q Now, would you conclude from what you know about toxoplasmosis, that if a person worked in the swamp, and the water, sometimes, water up to his waist, and was certainly in very, very close contact with rodent feces, with nutria feces, which is everywhere in the swamp
[DEFENSE COUNSEL]
Are you asking him to assume all of this?
[PLAINTIFF'S COUNSEL]
Right.
[DEFENSE COUNSEL]
Because I can agree with your statement that it's normal in the swamp.
This testimony, coupled with the two stipulations, is the only evidence linking plaintiff's disease to his employment. In his reasons for judgment, the trial court said,
After reviewing the testimony and the arguments, the court finds that the plaintiff has failed to show a causal relationship between the disease and the work in which he was engaged at the time. The deposition of Dr. Joseph Rumage indicates that given a set of assumptions then the disease probably would have been contracted. However, the basis for these assumptions were not proven to the court's satisfaction.
We agree with the trial court's assessment of the evidence.
To prevail in a worker's compensation suit, the claimant must prove by a preponderance of the evidence that his disability was caused by conditions to which he was exposed by virtue of his employment, that is, that the disability is job-related, whether it be the result of an injury by accident or the result of an occupational disease. See Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Page v. Prestressed Concrete Co., 399 So.2d 657 (La. App. 1st Cir.), cert. denied, 401 So.2d 994 (La.1981); see generally W. Malone and H.A. Johnson, 1 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice, § 143 (2d ed. 1980). If the evidence leaves the probabilities evenly balanced or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Page, 399 So.2d at 661.
All that the evidence firmly establishes in the present case is that the plaintiff contracted toxoplasmosis sometime prior to his examination on May 27, 1977; that toxoplasmosis is a rare disease endemic to moist, swampy areas; and that plaintiff was working for defendant during the summer of 1977 in the swampy area around Gonzales, Louisiana. While the possibility exists that he contracted the disease while on the job, the possibility equally exists that he contracted it elsewhere at some earlier time, possibly before 1975, possibly even as early as 1973 in Houma. We take judicial notice of the fact that moist, swampy *29 areas constitute much of the outdoors in south Louisiana. Moreover, as defendant correctly points out in brief, there is no evidence tending to prove that on the day plaintiff alleges he contracted the disease, May 25, 1977, he was actually working in a swamp, or otherwise exposed to infected soil or infected animal feces. No soil tests of the region were ever made, or if they were, they were not introduced into evidence.
For reasons unilluminated by the record, plaintiff did not testify on his own behalf. There is a rule in our jurisprudence, based upon the duty litigants owe the courts to assist in elucidating the truth of the controversy, that a party's failure to testify on matters material to his case and peculiarly within his knowledge creates a presumption that his testimony would be damaging to his case. See Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968); Istre v. South Central Bell Telephone Company, 329 So.2d 486 (La.App. 3rd Cir.1976), cert. denied, 333 So.2d 233 (La.1976); cf. Morgan v. Matlack, Inc., 366 So.2d 1071 (La.App. 1st Cir.1979). This court has recognized the limitation that the "adverse inference" rule is but one factor to weigh in adjudicating the case, and may not always be fatal. Gulf States Utilities Company v. Guidry, 183 So.2d 122 (La. App. 1st Cir.1966).
In the present case, however, plaintiff was in the best position to elucidate when and where he was exposed to toxoplasmosis, not his physician whose conclusions are based on assumptions of facts never adequately established by the evidence. Without the benefit of his testimony, we agree with the trial court's conclusion that the evidence presented fails to preponderate in his favor and therefore affirm the trial court's judgment.
All costs of these proceedings are to be paid by the plaintiff.
AFFIRMED.
NOTES
[1] The first leg of the journey is captured in Dunckelman v. T. Baker Smith & Sons, Inc., et al., 413 So.2d 669 (La.App. 1st Cir.1982). The second leg began with plaintiff's unsuccessful attempt to secure a new trial after final judgment was signed on February 24, 1982. After the motion for new trial was denied on December 2, 1982, plaintiff timely appealed to this court on February 3, 1983.
[2] Because we affirm the judgment, we need not decide whether plaintiff is permanently and partially disabled.