610 So.2d 219 (1992)
Ralph WOODS, Plaintiff-Appellant,
v.
BORDEN'S PERKINS DIV., et al., Defendants-Appellees.
No. 91-1282.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Michael Davis, Alexandria, for plaintiff-appellant.
Daniel Brenner, Alexandria, for defendant-appellee.
Before GUIDRY, DOUCET and WOODARD, JJ.
GUIDRY, Judge.
In this worker's compensation suit, the dispositive issue presented on appeal is whether plaintiff's physical condition is attributable to a work-related injury, thus *220 entitling him to worker's compensation benefits. The hearing officer before whom the case was presented found in favor of the employer. We affirm.
On June 20, 1989, the last day he worked, claimant, Ralph D. Woods, was employed by Borden Perkins Division as a truck driver. Borden's workers compensation carrier was Liberty Mutual Insurance Company. For approximately two and one-half years, Woods had driven eighteen wheeler tractor-trailer tankers to various locations out of Alexandria, Louisiana. The cargo he carried consisted of resin, phenol, formaldehyde and other chemicals. Plaintiff would drive to the assigned destination, help off load his cargo and then return to Alexandria.
Woods' log book shows that on June 20, 1989, he began work at 3:45 a.m. making a delivery to Oakdale and returning to Alexandria. At 7:00 a.m. that morning, he departed for Emerson, Arkansas, with his second cargo of the day. According to Woods, somewhere between Winnfield and Jonesboro, Louisiana, the air conditioning in his truck "went out" and he had to complete the trip to Emerson and back to Alexandria in 90 degree heat. From notations in plaintiff's log book and testimony at the hearing, it can be determined that plaintiff arrived back in Alexandria between 4:00 and 5:00 p.m.
Woods testified that, upon disembarking from his truck, he felt lightheaded, dizzy and weak. After turning over his truck to Ryder employees for refueling, he and his wife, who was waiting for him, went to a local fast food outlet where plaintiff obtained a soft drink. Woods' wife then drove him back to the truck lot so that he could check on the air conditioning problem. According to plaintiff, when he and his wife returned to the Ryder truck lot, they sat out front for a while. He then exited their vehicle and went in to check on his truck. Plaintiff claims he was informed the air conditioner's clutches were burned out.
At that point plaintiff and his wife left the truck yard and proceeded to plaintiff's attorney's office to discuss an unrelated matter. Plaintiff testified that while at his attorney's office he once again became dizzy and lightheaded to such an extent that he couldn't finish the business at hand.
Woods then had his wife drive him home. Upon arriving home, plaintiff sat for a while to rest. After resting for a while, Woods decided that a shower might make him feel better. After his shower, while getting dressed, Woods attempted to sit on his bed, but missed the bed and fell to the floor. His wife and son helped him finish dressing and took him to Rapides General Hospital where he was admitted for right middle ear infection (right otitis media) with dizziness (vertigo), weakness and heat exhaustion. According to plaintiff's hospital records, his chief complaint was one of dizziness.
Woods spent five days in the hospital and was discharged June 25, 1989, with his final diagnosis being primarily one of viral upper respiratory infection with laybrinthitis (infection of the inner ear) and vertigo; heat prostration; and, syncope secondary to above. On a follow up visit to Dr. Reynolds on June 29, 1989, Woods' continued complaints of dizziness and, now, lower extremity weakness prompted Dr. Reynolds to readmit him. Dr. Reynolds' discharge notes from the second admission, which lasted thru July 8, 1989, stated in part:
CHIEF COMPLAINT: Weakness in both lower extremities.
HISTORY AND PRESENT ILLNESS: this is a 35 year old white male who is readmitted some 4-5 days after recent discharge. Initially, the patient was admitted for weakness, dizziness and vertigo. Some 2 weeks ago, at this time, he appeared somewhat dehydrated. He had been on a recent trip in an unairconditioned truck during a hot day and was admitted after collapsing at home. Upon return from this trip, he was not grossly dehydrated but symptoms were consistent with heat exhaustion. He was found to have low grade fever and upon the initial admission, the patient was not completely worked up secondary to his large size being obese. He was not allowed *221 a CT scan of the head or MRI. However, we did find that he had positive EMG for nerve root irritation or radicular findings in nerve root L5-S1 on the right. The patient was also thought to have a viral labryinthitis. He was discharged home ambulatory and of good strength. Upon this date, however, he is seen in followup in my office and noted to have a marked weakness in both lower extremities with weakness in the extensors of the knee and flexors of the hip bilaterally in my office. This is a very remarkable weakness resulting in a slapping type gait. The patient is admitted for re-evaluation on the basis of this new symptom in view of the fact that we could not complete the workup previously because of the patient's size. (Emphasis ours).
Nothing definitive was discovered during plaintiff's second hospitalization and on July 8, 1989, he was discharged home to bed rest, where he remained until readmitted for a third time on July 17, 1989.
The hospital record generated during plaintiff's third admission includes the following:
At the time of this admission the patient has been at home, at bedrest, continuing to experience vertigo and severe headaches at home. The patient was taken for a ride this evening in the car by his wife just in an attempt to get him out of the house. However, after he began riding around in the car he became severely nauseous and slumped in the car and there is a history by the wife that she believes he lost consciousness in the vehicle. He was therefore brought straight to the emergency room of the hospital and evaluated by the emergency room physician. Emergency room evaluation was not specific for any positive findings, however, with such history he is readmitted for observation and possible further evaluation.
. . . . .
ASSESSMENT ON ADMISSION: Vertigo with nausea, vomiting and possible syncope at the time of admission. Previously elevated serum ammonia level with history of exposure to toxic material at his usual occupation. History of loss of extensor strength in both lower extremities and positive EMG study for L2-3 radiculopathy on the right.
PLAN: Patient will be admitted and observed for etiology of syncope and vertigo. EEG will be repeated and we will re-evaluate possible etiology of syncope from cardiac standpoint. The patient has a history of exposure to hepatotoxins such as caustic soda, ammonia and benzine and phenol in transport of such materials for the Borden Chemical Company. In view of this, we will attempt to further evaluate possible hepato and neurotoxic damage.
The narration describing the events leading up to plaintiff's third admission is inexplicably different from testimony elicited at trial wherein it was claimed that plaintiff blacked out and fell at home, thereby prompting his being transported to the hospital emergency room.
None of the doctors attending Woods in Alexandria could find any physical cause for Woods' continued complaints of muscle weakness and back pain. All neurologic exams performed were within normal limits, as was a bone scan. There was an unsuccessful attempt to perform a myelogram on plaintiff and he refused permission for a second attempt.
Inasmuch as the doctors in Alexandria were unable to find a cause of Woods' complaints, he was referred to Ochsner Foundation Hospital's Occupational Medicine Department. After a complete work-up, Dr. Richard Lopes at Ochsner reached a principal diagnosis of muscle weakness of undetermined etiology and morbid obesity (Woods is approximately six feet tall and weighs in excess of 336 pounds). Dr. Lopes' recommendations were for Woods to continue seeing Dr. Reynolds in Alexandria, to undergo physical therapy to regain strength and that psychiatric counseling be considered.
Woods continued to see Dr. Reynolds, was referred to Dr. Hujmurad, a neurologist whose recommendation to plaintiff that he undergo exploratory back surgery *222 was rejected, and finally, saw two different chiropractors. Both chiropractors found plaintiff totally disabled. At the request of defendants, Woods was examined by Dr. Applebaum on July 25, 1990, who concluded "I feel it is unlikely that the patient has disease or damage involving the spinal cord or nerve roots".
At the time of trial, Woods considered himself incapable of working, but still a Borden-Perkins employee. He had not received any worker's compensation payments and a number of his medical bills were still outstanding.
In this suit, plaintiff claims that all of his problems stem from his exposure to the heat and humidity of June 20, 1989, when his truck air conditioning unit failed. He claims that he was so affected by the heat, that it caused him to fall at home some four to five hours after leaving work and again some four weeks later. He attributes his muscle weakness and back pain to those two falls.
The hearing officer who tried the case on November 19, 1990 took it under advisement and, on May 13, 1991, issued a judgment in favor of defendants without any reasons for her decision.
The following principles of law reiterated in Venable v. Rawlings, Inc., 471 So.2d 1132 (La.App. 3rd Cir.1985), writ not considered, 476 So.2d 340 (La.1985), are well settled:
The plaintiff has the burden of establishing the causal connection between the disability and the employment by a reasonable preponderance of the evidence. Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982). However, he does not have to prove causal connection to an absolute certainty. It is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. See Hammond, supra, and Bryant v. Magnolia Garment Company, Inc., 307 So.2d 395 (La.App. 2nd Cir.1975).
Determination of whether there is sufficient evidence of causation is a question of law, not fact, to be determined by the trial court, not by medical experts. In Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir. 1982), the court explained `expert testimony is not controlling inasmuch as courts cannot abdicate their decisionmaking responsibilities in favor of the medical profession but must consider all factors present in a case.' As the Louisiana Supreme Court stated in Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119 (La.1982) (sic).
`The ultimate determination concerning disability under the worker's compensation statute is by the courts, not the medical experts. The courts apply legislative definitions to the medical science in order to achieve an equitable and just result. Bertrand [v. Coal Operators Cas. Co.], supra [221 So.2d 816] at 828. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton [v. Fireman's Fund American Ins. Companies], supra [355 So.2d 927] at 928.'
Therefore, an employee's claim for workmen's compensation benefits will be denied when there are other equally possible causes of his disease or disability not related to his employment. See Bryant v. Magnolia Garment Company, Inc., and Page v. Prestressed Concrete Company, supra.[1]
Plaintiff claims to be totally disabled due to low back and neck pain and muscle weakness. He attributes his claimed disability to the two falls he suffered on June 20, 1989 and July 17, 1989, and contends that both falls were due to the heat prostration (exhaustion) he suffered on June 20, 1989.[2] The record is very sketchy regarding the extend of plaintiff's alleged back and neck pain and muscle weakness. The *223 etiology thereof is not medically established.
Plaintiff avers his falls were caused by his exposure to 90 degree heat while driving his truck to and from an Arkansas delivery for his employer. While plaintiff's exposure to the heat and humidity was a direct result of his employment, there is no unequivocal link between that exposure and plaintiff's first fall some three to four hours after he left his job site. We note that, although two symptoms of heat exhaustion are dizziness and weakness, plaintiff did not fall until well after he was removed from the source of his discomfort. Further, we find very significant the fact that on the hospital records of plaintiff's first admission on June 20, 1989, plaintiff's primary diagnosis was a viral infection of the middle ear, the chief symptoms of which are dizziness, weakness and nausea.
Thus, the evidence presented by plaintiff, at best, shows only a possibility of his heat exposure causing his fall(s). There is at least an equal probability that plaintiff's ear infection caused his falls; and the record is devoid of any suggestion that the latter is in any way related to his employment.
In Venable, supra, this court stated:
It is well settled that if the evidence leaves the probabilities evenly balanced or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Page v. Prestressed Concrete Co., supra; Dunckleman [Dunckelman] v. T. Baker Smith & Sons, Inc., 447 So.2d 26 (La.App. 1st Cir.1984).
See also Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir.1991).
Presumably, the trier of fact in this case found that plaintiff had not carried his burden of proving his disability and its causal relationship with an employment related incident by a preponderance of the evidence. The principles of appellate review are well settled:
Whether the claimant has carried his burden of proof and whether the plaintiff's testimony is credible, are questions of fact to be determined by the trier of fact. The standard of review of the trial court's conclusion is under the manifest error-clearly wrong standard. Patterson, supra,[3]Rosell v. ESCO, 549 So.2d 840 (La.1989). Great weight is given to the trier of fact's factual conclusions, reasonable evaluations of credibility, and reasonable inferences of fact. These will not be disturbed though we may feel our own evaluations and inferences are equally reasonable.
Lubom, supra, 579 So.2d 1174 at 1179.
For these reasons, the judgment of the administrative hearing officer dismissing plaintiff's suit for workers compensation benefits is affirmed.
AFFIRMED.
NOTES
[1] 399 So.2d 657 (La.App. 1st Cir.1981).
[2] As previously indicated, the evidence is in conflict regarding plaintiff's second fall. Plaintiff's hospital admission on July 17, 1989 makes no mention of a fall.
[3] Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App.2d Cir.1990).