682 So.2d 871 (1996)
Felix HYMES, Plaintiff-Appellee,
v.
MONROE MACK SALES and Royal Insurance Company, Defendants-Appellants.
No. 28768-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
*873 Hunter, Scott, Blue & Johnson by Louis G. Scott, Bastrop, for Plaintiff-Appellee.
Juge, Napolitano, Leyva & Guilbeau by Jeffrey C. Napolitano and Lawrence B. Frieman, Metairie, for Defendants-Appellants.
Before NORRIS, BROWN and CARAWAY, JJ.
NORRIS, Judge.
In this compensation case, the Workers Compensation Hearing Officer ("WCHO") awarded the claimant, Felix Hymes, temporary total disability benefits, medical expenses, penalties and attorney fees. Finding that the WCHO committed manifest error in holding that Hymes's perirectal abscess, with complications, was an occupational disease characteristic of and peculiar to his employment as a truck driver and maintenance worker, we reverse.

Factual and procedural background
Hymes worked at Monroe Mack Sales as a truck driver and maintenance worker, earning $6.00 an hour. He had worked there for 16 years and was, at the time of the incident, 66 years old. The testimony establishes that although he once ran cross-country routes, for the three or four years prior to this incident he had been assigned primarily intrastate drives between the Mack stores in Monroe, Lafayette and Shreveport, usually three days a week; other days he made short trips around Monroe and West Monroe, and did light maintenance such as sweeping and mowing around the shop.
Shortly after he began the return trip from Lafayette to Monroe on the Thursday before Thanksgiving 1994, Hymes experienced a sudden onset of pain in his lower abdomen and groin. However, the pain receded and he completed the drive, as well as the next day's work, without reporting it to anyone. By Sunday night, however, the pain had become extreme; on Monday morning he reported for work but told his supervisor, Kenny Wilhite, that he would not be able to work. He went to a general practitioner, Dr. Henry Jones, who diagnosed hemorrhoids and prescribed pain pills and suppositories.[1] Hymes followed this course of treatment for several days without progress.
By the following Friday night, November 25, Hymes's condition had grown so bad that his daughter brought him to St. Francis Medical Center's emergency room. Dr. John Price, the general surgeon on duty, examined the patient's rectal and genital area and diagnosed necrotizing fasciitis, a severe and dangerous infection that spreads with extreme speed. In emergency surgery to debride the infected tissue, Dr. Price discovered a large perirectal abscess, or pocket of infection, that had spread into the genital area. He removed a large amount of dead tissue, and subsequently performed a colostomy. Because the infection had progressed into the genitals, a urologist was called to perform a bilateral orchiectomy, or removal of both testicles. After this, Hymes made remarkable progress; a skin graft was performed on December 1, and he was discharged from the hospital on December 14.
Monroe Mack paid Hymes his regular wages through the end of December. Hymes never told his employer or any physician that he considered his condition to be work-related; all medical expenses were paid by the company health insurance plan, which was 100% funded by Monroe Mack. Hymes filed the instant disputed claim in February 1995; at the mediation conference on March 21 he advised his employer that he viewed the perirectal abscess as work-related. At a deposition on July 6, Dr. Price testified that *874 Hymes could return to his previous employment; Monroe Mack offered him his old job, but Hymes never replied.
The case was heard before the WCHO in September 1995. The parties stipulated Hymes's employee status and average weekly wage, as well as Monroe Mack's comp coverage with Royal Insurance Company. Royal further stipulated that if the condition was found to be work-related, Hymes was entitled to 100 weeks of comp for disfigurement.[2] All other issues were presented for decision.
The WCHO found that Dr. Price's deposition "made it clear that a long distance truck driver who was required to drive for a long period of time was prone to have a perirectal abscess." Although there was no "accident" under the Compensation Act, she found that the perirectal abscess was an "occupational disease" as defined by La. R.S. 23:1031.1 B and thus compensable. She further found that Hymes was entitled to temporary, total disability benefits, reasonable and necessary medical expenses, penalties and attorney fees.

Applicable law
Every employee who becomes disabled because of the contraction of an occupational disease is entitled to compensation just as if he had been injured by an accident arising out of and in the course of his employment. R.S. 23:1031.1 A. This section further provides:
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease. * * *
The claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to the employment-related disease, that he contracted the disease during the course of his employment and that the disease is a result of the work performed. Price v. City of New Orleans, 95-1851 (La. App. 4th Cir. 3/27/96), 672 So.2d 1045. It is sufficient to prove the cause of the disability by a reasonable probability. Id.; Stutes v. Koch Services Inc., 94-782 (La.App. 3d Cir. 12/7/94), 649 So.2d 987, writ denied 95-0846 (La.5/5/95), 654 So.2d 335. The claimant will fail if he shows only a possibility that the employment caused the disease, or that other causes not related to the employment are just as likely to have caused the disease. Bryant v. Magnolia Garment Co., 307 So.2d 395 (La.App. 2d Cir.1975); Creekmore v. Elco Maintenance, 94 1571 (La.App. 1st Cir. 6/30/95), 659 So.2d 815; Page v. Prestressed Concrete Co., 399 So.2d 657 (La.App. 1st Cir.1981). Expert testimony is required to support a finding of an occupational disease. Price v. City of New Orleans, supra, and citations therein; see also Picard v. Dynamic Offshore Contractors, 92-1210 (La.App. 3d Cir. 5/12/93), 618 So.2d 1183.
The WCHO's factual findings are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Green v. Conagra Broiler Co., 26,599 (La.App.2d Cir. 3/1/95), 651 So.2d 335. Under this rule, the reviewing court does not decide whether the findings are right or wrong, but whether they are reasonable. Stobart v. State, 617 So.2d 880 (La.1993). The factfinder's choice between two permissible views of the evidence cannot be clearly wrong. Id.

Discussion
By their first assignment of error, Monroe Mack and Royal Insurance urge the WCHO erred in finding that Hymes met his burden of proving that the perirectal abscess was an occupational disease under R.S. 23:1031.1 B. They first contend that Hymes should not be classified as a "truck driver" for purposes of proving an occupational disease, as the record shows he did highway driving only three days per week. They next argue that Hymes did not prove that perirectal abscesses are "characteristic of and peculiar to" to the occupation of truck driving, a fortiori to Hymes's employment of truck driving and general maintenance work.
*875 We are constrained to find that the WCHO'S characterization of Hymes's work is plainly wrong. She wrote that he "drove trucks for defendant to several states, including, but not limited to, Washington, Pennsylvania, California and New York. He drove to Allentown, Pennsylvania about twice per week. * * * He would drive at six-hour intervals." (Emphasis added). Although Hymes testified on direct that he had driven to the states mentioned, he admitted on cross that for the last four years he had not been to California or Pennsylvania; he was not "really making long trips" around the time of the incident. R.p. 104. He also testified on direct that he usually drove two to three hours without stopping, not the six-hour intervals mentioned by the WCHO. R.p. 84. Further, there is absolutely no record evidence that Hymes drove to Allentown twice a week. Randall Price, Monroe Mack's president and general manager, testified that Hymes primarily picked up or delivered vehicles between Monroe, Lafayette and Shreveport; about once a month he would go out of state, generally to locations such as Dallas, Little Rock or Jackson. R.p. 125. The WCHO was therefore plainly wrong to describe Hymes as a "long distance truck driver who was required to drive for a long period of time."
The error of this finding is critical because it bears on the analysis of the disease itself. Monroe Mack and Royal Insurance argue that the record will not support the finding that a perirectal abscess is characteristic of and peculiar to Hymes's occupation. We have closely scrutinized the expert testimony, which consists only of the deposition of Dr. Price, the general surgeon who uncovered the abscess, debrided the area and performed the colostomy. We are constrained to find this deposition will not support the finding that the perirectal abscess is an occupational disease caused by the employment, as required by R.S. 23:1031.1 B.
Dr. Price stated that a perirectal abscess is caused by the blockage of an anal gland by something like a piece of stool or a kernel of corn. Material collects in the gland, gets infected and forms an abscess which can break out of the gland, enlarge, and ultimately result in necrotizing fasciitis. Dr. Price stated that the pain associated with the abscess will usually lead the patient to seek medical attention before serious infection sets in, but a patient with hemorrhoids (such as Hymes, according to Dr. Jones's diagnosis several days before the first operation) might not be able to notice a developing abscess. Dr. Price testified that the advanced condition, necrotizing fasciitis, spreads "like wildfire," and could go from "not being there to killing you within 24 hours or so"; it was not present a full week before surgery. Dr. Price could not state, however, when the abscess began, only that it had probably been present for a while, more than three days. On cross examination, he testified that if a person was a long-distance truck driver and had to hold his stool for a long time, this "could contribute" to the blockage of the anal gland. Dep., 18. When asked what would make a person prone to the condition, he replied:
It seems to me perhaps people that do have sedentary jobs, or jobs where they're sitting down a lot. People that are hairy * * * around the anal area, they seem to be, perhaps, a little bit more prone to it. Aside from that, I can't really think of anything else that would make somebody more particularly prone than another to have an abscess there. Dep., 19-20.
Noting that he often sat down during operations, Dr. Price admitted that he himself had a pilonidal cyst. On redirect he testified that sedentary workers tend to have problems with regularity because they remain still for long periods of time; physical motion is essential to bowel motion. When asked if anything in his own practice showed that truckers suffered from perirectal abscesses more than other workers, he replied:
I haven't really noticed that. I have just noticed that people that sit a lotyou know, I've had DJs, I've had * * * dentists, I've had, you know, whatever. I mean, people that sit on their hinies a lot, they seem to be a little more likely to get these things. Dep., 29.
Asked whether perirectal abscesses were characteristic of or peculiar to truck driving, Dr. Price said, "no." Id. He agreed that *876 long-term sitting may be a contributing factor, but not a causative one, in perirectal abscesses. Dep., 30.
The expression "characteristic of and peculiar to," as used in § 1031.1 B, does not mean that the disease occurs only in persons engaged in the particular employment and not otherwise found among the general public. Malone & Johnson, Workers' Compensation Law and Practice, § 220. Rather, it means that the disease must result from conditions and causes present in the employment and not from other causes to which the claimant and everyone else might have been exposed. Page v. Prestressed Concrete Co., supra. Stated otherwise, it means that the disease must originate from conditions in the employment that result in a hazard that distinguishes the employment in character from the general run of occupations. See Bowman v. Twin Falls Const. Co., 99 Idaho 312, 581 P.2d 770 (1978), and citations therein; Smith v. Crane Cams Inc., 418 So.2d 1266 (Fla. 1st DCA 1982), and citations therein.[3]
The only expert evidence introduced at this hearing, Dr. Price's deposition, does not provide a reasonable factual basis to isolate any special hazard in truck driving that distinguishes it from the general run of occupations. His speculation that DJs, dentists, surgeons, and anyone else who sits a lot may be susceptible to perirectal abscesses, will not satisfy the requirement of conditions characteristic of and peculiar to the claimant's particular trade, occupation, process or employment. Page v. Prestressed Concrete, supra. He frankly admitted he knew of no studies or reports that linked truck driving to the disease; he certainly did not identify an employment hazard as any more likely to cause it than certain non-work factors, such as an undigested kernel of corn lodged in the anal gland or the presence of excessive hair about the anus. Picard v. Dynamic Offshore, supra; Page v. Prestressed Concrete, supra. He never stated that Hymes's perirectal abscess was the result of his employment.
The evidence is all the less persuasive when it is remembered that Hymes's occupation was not cross-country, uninterrupted trucking, but mostly shorter hauls between Monroe, Lafayette and Shreveport, and those only three days a week.
Upon a proper characterization of the work actually performed by Hymes, and a fair application of that work to the expert testimony of Dr. Price, we have no alternative but to conclude that the WCHO committed manifest error in finding that Hymes's perirectal abscess was an occupational disease related to his employment. R.S. 23:1031.1 B. The order will therefore be reversed and the claim dismissed.
In light of this conclusion, we pretermit discussion of Monroe Mack and Royal Insurance's other assignments of error.

Conclusion
For the reasons expressed, the order of WCHO is reversed at Felix Hymes's costs, and his claim is dismissed.
REVERSED.
NOTES
[1] Dr. Jones's records were not introduced in evidence; he was neither deposed nor called to testify. The account of his diagnosis and treatment is Hymes's.
[2] La. R.S. 23:1221(4)(p).
[3] These cases all analyze statutory language identical or extremely similar to R.S. 23:1031.1 B.