736 So.2d 947 (1999)
Clyde W. COLLINS, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
No. 31,782-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*948 Lunn, Irion, Johnson, Salley & Carlisle by Julia A. Mann, Shreveport, Counsel for Appellant.
William T. Allison, Shreveport, Counsel for Appellee.
Before BROWN, GASKINS and KOSTELKA, JJ.
BROWN, J.
This is a workers' compensation case. Defendant, General Motors Corporation ("GM"), has appealed from a judgment awarding claimant, Clyde Collins, supplemental earnings benefits ("SEBs") based upon the finding that Collins was disabled as a result of his on-the-job exposure to petrochemicals. Finding no error, we affirm.

Facts and Procedural History
We note initially that this matter was before this court once before on a dispute regarding claimant's delay in submitting to a medical examination ordered by the hearing officer. Collins v. General Motors Corporation, 605 So.2d 219 (La.App. 2d Cir.1992). Writing for the court, Judge Carl Stewart summarized the underlying facts as follows:
Collins was employed as a technician by General Motors Corporation. Collins alleges that he was exposed to a toxic petrochemical, specifically Methyl Chloroform, from 1984 to 1987. Methyl Chloroform had been used to clean the floors in the GM plant where Collins worked.
Collins experienced nausea, dizziness, headaches, diarrhea, and ringing in his ears. He sought medical attention at the Environmental Health Center in Dallas, Texas. Dr. Alfred Johnson, a physician who treated Collins at Environmental Health Center, opined that Collins was hyperreactive to petrochemical odors and that Collins should work in an area that is chemically less contaminated with such products. In May 1988, Collins filed a claim for workers' compensation which asserted that his disability was caused by the exposure to Methyl Chloroform.
In Collins, supra, this court reversed the hearing officer's dismissal of claimant's workers' compensation claim for his failure to submit to the ordered medical examination and remanded the matter to the WCHO.
Thereafter, trial was set to begin on February 26, 1996. After claimant testified, the workers' compensation judge *949 ("WCJ"),[1] finding that Collins' treatment at the Environmental Health Center was possibly inadequate, suspended the proceedings and requested an independent medical examination, which was ultimately performed by Dr. Thomas Callender of Lafayette, Louisiana.[2]
In his July 19, 1997 report to the WCJ, Dr. Callender related his diagnoses of Collins, which included shortness of breath likely due to a chemical-induced bronchitis; reactive airway disease; migraine syndrome; vestibular dysfunction; organic brain disease; poorly controlled hypertension; chronic nasosinusitis; sleep disorder; likely obstructive sleep apnea; peripheral polyneuropathy; syncopal episodes on unknown etiology; and hearing loss and tinnitis.
Dr. Callender opined that exposure to organic solvents could have caused the various conditions he observed in Collins. Dr. Callender further found that the chemicals that claimant was exposed to caused, aggravated or contributed to his long-term health problems and that Collins was totally disabled as a result of his exposure to petrochemicals at the GM plant.
The WCJ found that Collins met his burden of proving a causal relationship between his on-the-job exposure to organic solvents and his hypersensitivity and/or hyperreactivity to hydrocarbons and that this condition was disabling. The WCJ further found that Collins could have returned to some form of gainful employment as of June 1, 1988 in an environment free of exposure to hydrocarbons and awarded him SEBs, noting GM's failure to produce any evidence of jobs available to claimant within his ability to perform.
GM has appealed from the WCJ's January 21, 1998 judgment.

Discussion

Occupational Disease
GM argues that the WCJ erred in finding that claimant met his burden of proving that he contracted an occupational disease. According to appellant, there is no credible medical evidence to support Collins' claim that exposure to the floor cleaning solution used at the GM plant from 1984 to 1987 caused his symptoms. Furthermore, assuming arguendo that Collins proved the existence of an occupational disease, it is GM's position that claimant did not establish that his condition was disabling.
Under Louisiana workers' compensation law, every employee who is disabled because of the contraction of an occupational disease is entitled to compensation benefits, provided that the employee's illness arises out of and in the course and scope of his employment. La. R.S. 23:1031.1(A). An occupational disease is defined as a "disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such a disease." La. R.S. 23:1031.1(B).
The causal link between an employee's illness and work-related duties must be established by a reasonable probability. Seal v. Gaylord Container Corporation, 97-0688 (La.12/02/97), 704 So.2d 1161; Coats v. American Telephone & Telegraph Company, 95-2670 (La.10/25/96), 681 So.2d 1243. Once the employee has established the existence of an occupational disease, for his illness to be compensable, he must further establish that the illness is disabling. Id.; Miller v. *950 Roger Miller Sand, Inc., 94-1151 (La.11/30/94), 646 So.2d 330.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.07/07/97), 696 So.2d 551; Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Hymes v. Monroe Mack Sales, 28,768 (La.App.2d Cir.10/30/96), 682 So.2d 871. Under this rule, the reviewing court does not decide whether the findings are right or wrong, but whether they are reasonable. Banks, supra; Stobart v. State, Through Department of Transportation & Development, 617 So.2d 880 (La.1993); Hymes, supra. The factfinder's choice between two permissible views of the evidence cannot be clearly wrong. Id.
In the instant case, the record contains sufficient evidence to support the WCJ's finding that Collins' hypersensitivity and/or hyperreactivity to hydrocarbons arose out of and in the course and scope of his employment with GM. We further find evidence to support the WCJ's conclusion that Collins' occupational disease was disabling.
The following is excerpted from the WCJ's oral reasons for judgment:
While I appreciate the difficulty of meeting the burden of proof in this case, I think that the testimony of Mr. Collins is consistent enough with the history provided to Dr. Callender and the reports of Dr. Cousins [sic] that it would meet just minimally a burden of proof in Workers' Compensation to show a relationship between the exposure between 1983 and 1987 to show ... at most developing or aggravating [a] reaction to hydrocarbons ...
The medical testimony shows that he could have returned to some form of employment as of June 1, 1988, as long as he was in a controlled environment and not exposed to chlorinated hydrocarbons. So at best it's a recovery of supplemental earnings benefits.
I do concur that the symptoms as testified to by Mr. Collins were perhaps not as accurate and [sic] they could have been many years ago, but it is many years down the road.... I don't think that you can take and pinpoint a particular exposure and come out with this particular disability. But this has had a lot of complicated factors in between, and even if there is a psychological overlay and even if there is a preexisting hyperreactivity, I can't get around the fact that it was becoming more extreme to the point that he could not return to his employment after March of '88, and that there were at least objective signs on the testing to show a continued hyperreactivity to hydrocarbons later, I guess, in 1997....
I think that the problem is it meets the burden as of 1988-1989 and then I can't find the job that was reasonably available to him or offered to him that was without chlorinated hydrocarbons or in a significant enough controlled environment.
Once he meets his burden and shows that, it's the defendant's burden to show what job he could have performed. There's no evidence here that after 1988 there was a job that would have eliminated his hyperreactivity ...
I will tell you that I will not find that there is that basket case of problems, nor do I find that there were all of these resultant significant systems [sic], and I agree with Dr. Griffith to that extent. You can't universalize this. I will merely find that there was an aggravation to his hyperreactivity that resulted in his inability to be around hydrocarbons and that meets a sufficient burden to disable him and from that point on until there was a showing that there was a job that would not have continued to aggravate his reactivity to hydrocarbons, that he is entitled to *951 supplemental earnings benefits. (Emphasis added).
As noted above, on this record, we are unable to conclude that the WCJ was manifestly erroneous or clearly wrong in finding that Collins contracted an occupational disease which caused him to suffer a statutory disability.

Independent Medical Examination
Appellant also urges that the WCJ erred in suspending the trial for an independent medical examination based upon her finding that claimant's medical care/treatment was inadequate.
La. R.S. 23:1124.1 provides in pertinent part that a hearing officer [WCJ] may, on her own motion, order a claimant appearing before her to be examined by other physicians. Likewise, the control of the order of trial and procedure, which includes a decision to hold open or reopen a case for additional evidence, rests within the sole discretion of the trier of fact, whose decision will not be disturbed absent an abuse of discretion. La.C.C.P. arts. 1631 and 1632; Watkins v. Asphalt Associates, Inc., 96-249 (La.App. 3d Cir.12/04/96), 685 So.2d 393; Gary v. Dimmick Supply Company, 427 So.2d 33 (La. App. 3d Cir.1983) (citations omitted).
The record reveals no abuse of the WCJ's discretion. In fact, we note that GM took advantage of the suspension of trial to procure an examination of Collins by Dr. Salvaggio, their physician of choice. Furthermore, not only did appellant's counsel fail to object, he affirmatively stated that he had no objection to a continuance for a court-ordered medical examination. This assignment of error is without merit.

Conclusion
For the reasons expressed above, the judgment of the workers' compensation judge is AFFIRMED at appellant's cost.
NOTES
[1] By Acts 1997, No. 88, § 1, effective June 11, 1997, "workers' compensation judge(s)" was substituted for "administrative hearing officer(s)" and "hearing officer(s)" throughout Title 23, Chapter 10. See, e.g., La. R.S. 23:1310.1.
[2] Collins was first examined, at GM's request, by Dr. John Salvaggio of the Tulane Medical Center in New Orleans, Louisiana. Because his findings were diametrically opposed to those of claimant's treating physician, the WCJ ordered that Collins submit to further examination.