J^KOSTELKA, J.
Paula Leanne Moore (“Moore”) appeals a judgment of the Office of Workers’ Compensation in favor of her former employer, Ronald J. Miciotto (“Miciotto”) denying her claim jfor disability benefits, medical expenses, penalties and attorney fees. For the following reasons, we affirm.
Facts
Moore was employed part-time doing secretarial work for Miciotto, a Shreveport attorney, from May 1992 through December 31, 1998. On December 21, 1999, she filed a disputed claim for workers’ compensation disability benefits and medical expenses against Miciotto.[1] In her complaint, Moore claimed to have been diagnosed with several hand and wrist ailments which she attributed to her job duties with Miciotto.[2]
During Moore’s employment with Mi-ciotto, her duties consisted mainly of typing pleadings and correspondence on an average of twenty to twenty-five hours per *1254 week. In late 1996 or early 1997, Moore began suffering from pain in her hand and stiffness and locking of her thumbs and fingers. She was treated by Dr. Thomas A. Pressly (“Dr.Pressly”), a rheumatologist, starting in March of 1997. Dr. Pressly initially diagnosed her hand pain as being caused by peripheral neuropathy (degenerative nerve disease affecting the nerves outside the spine or brain) and trigger finger. Moore continued to receive treatment from Dr. Pressly until her last visit in pJune of 1999. Just prior to the last visit, Dr. Pressly had reached the conclusion that Moore had also developed mild carpal tunnel syndrome and diabetic cheiroarthropathy (scarring of the joints as a result of diabetes) which were additional causes of the hand pain being experienced by Moore.
While being treated by Dr. Pressly, Moore was referred to hand surgeon Dr. Ronzee Bridges (“Dr.Bridges”) who performed surgery in May of 1998 on Moore’s right hand to relieve the symptoms being caused by the trigger finger. During his treatment of Moore, Dr. Bridges referred Moore to Dr. Eric Bicknell (“Dr.Bicknell”), a specialist in physical medicine and rehabilitation, to evaluate her for carpal tunnel syndrome. After Dr. Bicknell confirmed that Moore suffered from moderately severe bilateral carpal tunnel syndrome, Dr. Bridges performed two separate carpal tunnel surgeries on each of her hands in 1999. After the surgeries, Dr. Bridges referred Moore to Dr. Michelle Ritter (“Dr.Ritter”), an orthopedist, who treated her for pain in her hands, fingers, and elbows.
At trial Moore testified that she had not worked as a typist since December 31, 1998, when her condition forced her to leave the employ of Miciotto. She also testified that she has been an insulin-dependent diabetic for over twenty years and that she first began to experience tingling and numbness in her hands and fingers as early as 1985 or 1986. Moore also testified as to her lifelong involvement with painting.
The testimony of Moore’s physicians was submitted to the trial court in the form of trial deposition transcripts. The Workers’ Compensation Judge (“WCJ”) rendered judgment denying Moore’s claim for disability 1 «benefits, medical expenses, penalties and - attorney fees on the basis that Moore failed to prove by a preponderance of the evidence that she had sustained a work-related occupational disease. This appeal by Moore ensued.
Discussion
On appeal, Moore urges reversal of the WCJ’s judgment that Moore had failed to establish a work-related occupational disease and requests that she be awarded medical expenses in the amount of $35,792.25, as well as permanent total disability benefits. Moore argues that the WCJ erred because a preponderance of the evidence, i.e., the medical testimony, tended to show that her disabilities were causally linked to her work duties with Miciotto.[3]
By definition, an occupational disease or illness is due to causes and conditions characteristic of and peculiar to a particular trade, occupation, process, or employment in which the employee is exposed to the disease or illness, and although carpal tunnel syndrome is recognized as an occupational disease, it must *1255 be work-related. La. R.S. 23:1031.1(B). A claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to an employment-related disease, that the disease was contracted during the course of employment, and that the disease is a result of the work performed. Hymes v. Monroe Mack Sales, 28,768 (La.App.2d Cir.10/30/96), 682 So.2d 871; Price v. City of New Orleans, 95-1851 (La.App. 4th Cir.03/27/96), 672 So.2d 1045, writ denied, 96-1016 (La.10/25/96), 681 So.2d 360. The causal link between an employee’s occupational disease and work-related duties must be established by a reasonable probability. Hymes, supra; Shields v. GNB Technologies, Inc., 33,911 (La.App.2d Cir.10/04/00), 768 So.2d 774; Seal v. Gaylord Container Corp., 97-0688 (La.12/02/97), 704 So.2d 1161. The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused the disease. Hymes, supra; Bryant v. Magnolia Garment Co., 307 So.2d 395 (La.App. 2d Cir.1975). Expert testimony is required to support a finding of an occupational disease. Hymes, supra; Price, supra; see also, Picard v. Dynamic Offshore Contractors, 618 So.2d 1183 (La.App. 3d Cir.1993).
The factual findings of the WCJ are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Green v. Conagra Broiler Co., 26,599 (La.App.2d Cir.03/01/95), 651 So.2d 335. Under this rule, the reviewing court does not decide whether the findings are right or wrong, but whether they are reasonable. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). The fact-finder’s choice between two permissible views of the evidence cannot be clearly wrong. Id.
We do not believe the trial court committed manifest error in finding that Moore’s condition was not caused by her work-related duties. As to the carpal tunnel syndrome, while the evidence certainly indicates the 1 ^possibility that her secretarial duties could have been a contributing factor to its development, two of her treating physicians, Dr. Pressly and Dr. Bridges, testified that her condition could have been solely caused by her long-term diabetic condition. Dr. Bridges went further in testifying that it was his belief that Moore’s diabetes was primarily responsible for the carpal tunnel syndrome. Thus, while the evidence allows for another permissible view on the causation issue (i.e., that her work as a secretary may have caused her carpal tunnel syndrome), the trial court’s choice between two permissible views does not constitute manifest error as to the carpal tunnel syndrome.
As to Moore’s trigger finger condition (which she stated affected all ten fingers), we likewise conclude that the WCJ did not commit manifest error in finding that Moore failed to prove the condition was work-related. Dr. Pressly testified that trigger finger “[is] very common to have if you have diabetes.” He continued in his opinion that “[W]e don’t fully understand why people get [trigger finger]. Certainly it seems to happen a lot more common [sic] in some families, so there’s a genetic influence with it. People that use their hands a lot will have a tendency to get this. And people that have diabetes have an increased risk of having this too.” He noted that whereas the typing could have precipitated Moore’s trigger finger condition, the diabetes itself could have been the cause of it as well. Although Dr. Bridges testified as to his belief that the typing was most probably the catalyst for the trigger finger, he was not totally confident that such activity alone was the sole *1256 cause of her condition. When pointedly asked whether the typing was a potential cause of her trigger finger, he | ¿responded, “... maybe, you know.” When further questioned as to whether her work as a secretary for Miciotto caused the trigger finger, Dr. Bridges responded, “It would be hard to say. I mean, you know, as far as — there’s .a definite cause and effect. I mean, could it contribute? Yes. Could it be stuff at home? It could be stuff at home.” Moreover, Dr. Bridges did allow for the fact that engaging in artwork could likewise be an offending activity depending on the type of art being done. And whereas Dr. Bridges maintained that the diabetes alone could not cause trigger finger and that a traumatic event was necessary, Moore never proved by a preponderance of the evidence that said traumatic event was typing, i.e., the work she did for Miciotto. Clearly, as to Moore’s trigger finger condition, the WCJ’s final determination was supported by the deposition testimony of Dr. Pressly, whose opinion was more unequivocal than Dr. Bridges’, making the conclusion reasonable and not manifestly erroneous. Thus, the WCJ was not clearly wrong in finding that Moore failed to prove by a preponderance of the evidence her trigger finger condition was work-related.
Conclusion
For the foregoing reasons, the trial court’s judgment in favor of Ronald J. Miciotto is hereby affirmed, with costs of this appeal assessed to Paula Moore.
AFFIRMED.

. Moore also named as a defendant the Parish of Caddo where she had been a full-time employee as a secretary from approximately August of 1983 until December of 1990; however, the Parish of Caddo was dismissed from the suit by judgment dated August 17, 2000, granting its exception of prescription.

. Although Moore listed several diagnoses in her complaint, the record reflects that she was treated primarily for carpal tunnel syndrome and flexure tenosynovitis (commonly referred to as trigger finger),

. Moore additionally argues that she should benefit from a "presumption of disability" due to her prior qualification for disability benefits through the Social Security Administration. Such a presumption is expressly prohibited by statute which requires proof by clear and convincing evidence "unaided by any presumption of disability.” La. R.S. 23:1221(l)(c) and (2)(c). Accordingly, that argument is without merit.