711 So.2d 772 (1998)
Virginia McRAY, Individually and on Behalf of the Minor Children, and Anthony Jackson, Plaintiff-Appellee,
v.
BOOKER T. WASHINGTON NURSING HOME, Defendant-Appellant.
No. 30399-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*774 Pringle & Herzog by R. Perry Pringle, Shreveport, for Defendant-Appellant.
Frank M. Ferrell, Shreveport, for Plaintiff-Appellee.
Before MARVIN, C.J., and STEWART and GASKINS, JJ.
MARVIN, Chief Judge.
In this malpractice action, the defendant nursing home appeals a default judgment and the denial of its motion for new trial. Finding that plaintiffs failed to present evidence sufficient to establish a prima facie case, we vacate the default judgment and remand.

FACTS
Golden McRay, Jr. was rendered a paraplegic after being shot in early 1990. After being hospitalized in LSU Medical Center in Shreveport, McRay was placed in Guest Care Nursing Home. Shortly thereafter, McRay was moved to the defendant nursing home, BTW, in May 1990. McRay remained there until he was moved to a third nursing home on August 20, 1990, where his condition was quickly recognized as critical and he was again hospitalized in the LSU Medical Center, where he died on November 23, 1990 at the age of 38.
Plaintiffs, McRay's surviving spouse, Virginia McRay, their four minor children, and his one major child, Anthony Jackson, brought their action against BTW on November 22, 1991. They alleged that they made complaints to the Louisiana Department of Health and Hospitals (DHH) regarding neglect of McRay by the BTW staff; that after an investigation by DHH found the complaints to be valid, DHH ordered McRay's transfer from BTW; that McRay was moved to Arcadia Nursing Home, where it was discovered that because of BTW's neglect, severe bed sores had developed, leading to gangrene and requiring hospitalization; that McRay subsequently died from the gangrene and resulting infection; and that McRay's death was the direct result of BTW's failure to provide the standard of care required for a paraplegic.
On November 27, 1991, service was made on Gloria Harrison, BTW's registered agent for service of process. BTW did not file an answer or otherwise plead. No further court action was taken in this matter until October 3, 1996, when plaintiffs filed notice to substitute Frank Ferrell for James Dawson as counsel of record. Ferrell entered a preliminary default on November 6, 1996. On November 18, 1996, the trial court conducted a hearing to confirm the preliminary default. At the conclusion of this hearing, the court rendered a default judgment awarding $30,000 to McRay's estate for his pain and suffering, $15,000 to Virginia McRay for loss of consortium, love and affection, and $5,000 to each of the four minor children. The court rejected the claims of Anthony Jackson.
BTW filed a motion for new trial on November 26, 1996, urging that it be allowed the opportunity to present defenses to plaintiffs' allegations. BTW contended that a new trial should be granted because the default judgment is contrary to the law and the evidence and because it thought that its attorney, Neil Martin Trichel, and its insurer were handling the matter. Attached to the motion is a letter dated January 31, 1994, from Ferrell to Trichel. Ferrell's letter reminded Trichel that the status of this case *775 had been discussed on two occasions and told Trichel that he had not filed responsive pleadings. The letter asked if Trichel was going to respond or whether Ferrell should proceed to obtain a default judgment. Following a hearing, the court denied the motion for a new trial, finding that defendant's mere failure to file an answer does not constitute good grounds for granting a new trial under La. C.C.P. art. 1973.
BTW appealed.

DISCUSSION
To confirm the default judgment, plaintiffs were required to present to the trial court "proof of the demand sufficient to establish a prima facie case" against BTW. La. C.C.P. art. 1702. We have explained the burden of establishing a prima facie case:
A "prima facie case" is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied. In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at a trial on the merits. Hearsay evidence does not sustain the burden of proving the prima facie case necessary for confirmation of default.

Carroll v. Coleman, 27,861 (La.App.2d Cir. 1/24/96), 666 So.2d 1264. (Citations omitted).
When reviewing a default judgment, an appellate court is restricted to a determination of the sufficiency of the evidence offered in support of the judgment. Ordinarily, it is presumed that a default judgment has been rendered on sufficient evidence and is correct. This presumption is not applied when the testimony has been transcribed for an appeal of the judgment. In that appeal, we review the record to determine whether the evidence supporting the judgment was sufficient and competent. Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991).
At the hearing to confirm the preliminary default, Virginia McRay testified that her husband's condition prevented him from walking or using his arms and hands, but he was able to speak; that McRay was at BTW from May 1990 to August 1990, and she would visit him from five to six times per week; that McRay was at the LSU Medical Center when he died on November 23, 1990; that McRay developed bed sores while at BTW, and she complained about this to the BTW staff, but she did not speak to a doctor about her husband's condition; that if McRay had the sores before he came to BTW, she did not know about it; that she did not see the BTW staff take any measures to treat the bed sores; that an investigation of this incident by the state resulted in McRay's removal from BTW; that McRay was transferred to a nursing home in Arcadia, where the staff considered his condition to be so bad that they transferred him to the LSU Medical Center; and that McRay's doctor told her that he died because of a bad infection from the bed sores. No other witnesses testified.
Plaintiff introduced as "P-1" a cover letter to attorney Dawson from the Department of Health and Hospitals (DHH) and copies of two interoffice communications from the regional office of DHH. The first communication, dated July 27, 1990, contains a list of allegations made by a clinic nurse against BTW regarding McRay's treatment. The second interoffice communication, dated August 13, 1990, details the results of the investigation into the July 27, 1990 complaints. Attorney Ferrell acknowledged to the court that these documents were not certified. BTW of course argues that these three documents were hearsay and did not meet the requirements for admissibility of business records under La. C.E. art. 803(6). Plaintiffs counter that the documents were admissible as factual findings under La. C.E. art. 803(8).
Art. 803(8)(a)(iii) provides that a report by a public agency is an exception to the hearsay rule:
Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.
*776 This exception is limited by Art. 803(8)(b)(iv), which states that except as specifically provided otherwise by legislation, this exception does not apply to:
Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.
While factual findings from a general investigation may be admissible, factual findings from a specific or particular investigation are inadmissible under the public records exception. Moreover, if a public report is excluded under Art. 803(8)(b), it is not admissible under the business records exception to the hearsay rule. La. C.E. art. 803(6).
The comments to exception (8) of Art. 803 distinguish a special investigation of a particular complaint from a general investigation. A special investigation is an investigation into the circumstances that give rise to the proceeding in question. An example of a report from a general investigation is a report establishing a link between cigarette smoking and lung cancer. An example of a report from a special investigation is a finding by a government investigator that the cause of an accident which is the subject of the proceeding is a defective tire. See Green v. Connor, 94-2120 (La.10/7/94), 644 So.2d 618. There the plaintiff sought social security disability benefits after being injured in an auto accident, while simultaneously filing a claim against his uninsured motorist insurer alleging arbitrary and capricious handling of his claim for UM benefits. In a per curiam opinion, the court ruled that because the social security proceedings involved the same incident as the suit against the insurer, the factual findings made by the social security administration were inadmissible under Art. 803(8)(a). See also Zatarain v. WDSU-Television, Inc., 95-2600 (La.App. 4th Cir. 4/24/96), 673 So.2d 1181 [Letter of Determination from EEOC concluding that television station likely discriminated against news anchor was not admissible under Art. 803(8)(b)(iv) in the anchor's employment discrimination suit against station].
The first interoffice communication contains the allegations that McRay had massive decubiti [pressure sores] that were not being cared for and were getting worse, that his penis was draining pus and there was a lesion behind the foreskin, and that McRay had not had a bath in over a week. The second interoffice communication, dated August 13, 1990, contains the results of the investigation into these allegations, with the investigators finding the first two allegations to be valid. The investigators further concluded that because McRay required "SNF" level care, his placement at BTW was inappropriate since BTW is an "ICF" facility, and transfer to a "SNF" facility was therefore ordered. Obviously, the second interoffice communication contains factual findings regarding the same incident [BTW's treatment of McRay] that is the subject matter of this litigation. Under Art. 803(8)(b)(iv), this communication is not within the public records exception to hearsay and should not have been admitted.
The letter to Dawson and the first interoffice communication likewise constitute inadmissible hearsay. While plaintiffs contend both are exceptions under Art. 803(8)(iii), neither contains "factual findings resulting from an investigation made pursuant to authority granted by law." The cover letter to Dawson simply informs him that the two interoffice communications are attached. The first interoffice communication only lists allegations, not conclusions. Moreover, even if the letter and the first interoffice communication could have been admitted under the business records exception to hearsay found in Art. 803(6), that exception requires the testimony of the custodian or other qualified witness regarding the agency's record-keeping procedures. Plaintiffs did not provide this in this record.
Even if we assume that each of the three documents in P-1 came under an exception to the hearsay rule, we note the lack of authentication. La. C.C.P. art. 1702(B)(2) provides that when the demand is based upon a delictual obligation, a plaintiff's testimony can be corroborated by affidavits and exhibits annexed thereto which shall be selfauthenticating. *777 The three documents in P-1 were not accompanied by any affidavit.
La. C.E. art. 902(2)(b) allows for originals of documents from a state agency to be admitted without extrinsic evidence of authenticity when certified as being the original. Copies of documents from a public agency are self-authenticated when certified as being true or correct by the custodian or other person authorized to make that certification. La. C.E. art. 904. Attorney Ferrell correctly responded to the trial court's question that the documents were not certified. P-1 should not have been admitted without certification or extrinsic evidence as to its authenticity.
As noted, hearsay evidence does not sustain a plaintiff's burden of proof to establish a prima facie case necessary to confirm a default. Carroll, supra. The three P-1 documents, hearsay and not authenticated, are not competent evidence. We are then left only with the testimony of Virginia McRay, to determine whether it alone is sufficient to confirm the default. The testimony of a plaintiff alone may be sufficient to confirm a default. Carroll, supra. We find, however, the testimony of Mrs. McRay does not establish a prima facie case of BTW's negligence. The standard of care imposed on a nursing home is that of reasonable care, considering the patient's mental and physical condition. McCartney v. Columbia Heights Nursing Home, Inc., 25,710 (La.App.2d Cir. 3/30/94), 634 So.2d 927.
Mrs. McRay did not offer testimony regarding the standard of care that BTW owed to her husband. Furthermore, we have no evidence establishing that BTW's alleged failure to provide reasonable care caused the bed sores. Virginia McRay simply said that her husband developed bad bed sores at BTW, without showing what alleged omission by BTW caused the bed sores. Nor do we have evidence to support plaintiffs' allegation that the bed sores caused McRay's death within the three months after he left BTW's care. Virginia McRay's testimony that a doctor told her that McRay died because of an infection from the bed sores again is simply hearsay testimony. Her testimony that an investigation of this incident by the state led to her husband's removal from BTW is also hearsay. Because plaintiffs presented essentially hearsay evidence to establish a prima facie case, we must find that the default judgment was improperly granted.
Because we vacate the default judgment, we do not address the assignment of error that the trial court erred in denying the motion for a new trial.

DECREE
At the cost of plaintiffs, the default judgment is VACATED and this matter is REMANDED to the trial court.