819 So.2d 473 (2002)
Noel RACHOU, Perry Dragon and Bernard Dragon, Individually and as Heirs of Decedent Gladys Cosse Dragon
v.
CORNERSTONE VILLAGE INC.
No. 02-42.
Court of Appeal of Louisiana, Third Circuit.
June 5, 2002.
*474 Larry Lane Roy, Preis, Kraft & Roy, James R. Shelton, Durio, McGoffin & Stagg, Lafayette, LA, for Cornerstone Village, Inc.
Ronald Cole Richard, Rudie Ray Soileau, Jr., Lake Charles, LA, for Noel Rachou, Perry Dragon and Bernard Dragon.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and BILLIE COLOMBARO WOODARD, Judges.
YELVERTON, J.
Cornerstone Village, Inc., appeals a default judgment rendered against it on a negligence claim. Cornerstone operates a nursing home in Lafayette and was sued by the three adult children of Gladys Dragon, an aged resident of the nursing home. Her children, Noel Rachou, Perry Dragon, and Bernard Dragon, asserted causes of action against Cornerstone alleging negligence, breach of contract, and violation of their mother's rights pursuant to Louisiana Revised Statute 40:2010.8 et seq. The contextual facts on which all theories of recovery were grounded included the allegations that she was injured in a shower fall in June 1999 and suffered until her death. On July 5, 2000, a preliminary default was entered against Cornerstone. A hearing to confirm the default judgment was held on February 5, 2001. Finding that the Plaintiffs had established a prima facie case of negligence, the trial court confirmed the default judgment on that ground on February 9, 2001, and awarded *475 $350,000 in general damages in addition to costs. The trial judge expressly found that the evidence was insufficient to support recovery under the breach of contract and Louisiana Revised Statute 40:2010.8 et seq. grounds.
Cornerstone filed a motion for new trial which the trial court heard and denied. Cornerstone claims on appeal that the confirmation of the default judgment was in error because the children failed to establish the elements of a prima facie case with competent evidence. It also appeals the trial court's refusal to grant its motion for a new trial alleging that it established that there was insufficient service of process, that it was not the proper party, and that the award of general damages was excessive. Because we find that the first assignment of error, that the Plaintiffs failed to establish the elements of a prima facie case, is valid and requires reversal, it is not necessary that we discuss the remaining assignments.

DEFAULT JUDGMENT
The factual context of their negligence claim, which the children undertook to prove at the confirmation of default, was that on June 5, 1999, Ms. Dragon was dropped on the shower floor by an aide resulting in fractures to both of her hips. The trial court confirmed the default on a finding that there was evidence establishing a prima facie case of negligence regarding this incident.
Cornerstone maintains that the trial court erred because the evidence relied on by the Plaintiffs to establish their prima facie case of negligence was not competent or admissible. It adds that there was no evidence as to the standard of care owed or whether it breached the standard of care and that there was no testimony and no sworn narrative reports from treating physicians regarding either an injury or damages.
"A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case." La. Code Civ.P. art. 1702(A).
In order for a plaintiff to obtain a default judgment, "he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant." "In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits." A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim. "There is a presumption that a default judgment is supported by sufficient evidence, but this presumption does not attach when the record upon which the judgment is rendered indicates otherwise."
Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993) (citations omitted).
Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis. The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); *476 and (5) proof of actual damages (the damages element).
Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440 p. 7 (La.3/23/01), 782 So.2d 606, 611.
Regarding the duty owed by a nursing home to its patients, it has been consistently held that the duty is similar to that owed by a hospital to its patients. Lemoine v. Insurance Co. of North America, 499 So.2d 1004 (La.App. 3 Cir.), writ denied, 501 So.2d 199 (La.1986). "Although a nursing home is not the insurer of the safety of its patients, nevertheless, it is the duty of the nursing home to provide a reasonable standard of care taking into account the patient's mental and physical condition." Id. at 1007.
A review of the record establishes that the evidence relied upon by the Plaintiffs in their efforts to put on a prima facie case of negligence against Cornerstone was entirely hearsay. The first witness was Perry Dragon. He testified that his mother lived with him for about 10 years, but after she fell in his home and broke her hip, they had to put her in a nursing home. He testified that his knowledge of what happened in June 1999 came from talking to his sister, "visiting with the doctors and so forth," and his sister's conclusions after her "first hand investigation." He said "My sister ... spoke with a number of people that were directly involved with that incident."
The next Plaintiff who testified was Noel Rachou, Ms. Dragon's daughter and the sister on whose "first hand investigation" Perry Dragon relied for his testimony. Noel Rachou testified that her investigation revealed that her mother had been dropped by an aide in the shower. She said the unidentified aide told her that herself. Ms. Rachou testified that her mother was taken to a hospital in Lafayette. Ms. Rachou testified that she talked to the doctor at that hospital. She testified that the doctor said her mother had broken both legs. She testified that the doctor performed surgery. Neither the records from that hospital, nor the testimony of the doctor who Ms. Rachou testified performed the surgery there, was put in evidence. Hearsay evidence does not sustain the burden of proving a prima facie case when attempting to confirm a default judgment. Ducharme v. Guidry, 392 So.2d 755 (La.App. 3 Cir.1980); McRay v. Booker T. Washington Nursing Home, 30,399 (La.App. 2 Cir. 4/8/98), 711 So.2d 772.
To help establish the negligence case, the Plaintiffs introduced Ms. Dragon's nursing home medical records into evidence. The admissibility of nursing home records is governed by the hearsay rule and exceptions to that rule. State v. Romero, 574 So.2d 330 (La.1990). "Reliability and trustworthiness of hearsay evidence must be established before it may be admitted into evidence." Id. at 334. "`In all conceivable exceptions to the hearsay rule, the trustworthiness of the evidence is the primary criterion for admissibility.'" Id.
In addition to not being certified, and in addition to containing no substantiation that the resident was dropped by an aide in the shower, these nursing home records, we find, were unreliable. The Plaintiffs attempted to establish a "chain of custody" to admit the records. Ronald C. Richard (Plaintiffs' original attorney) testified that he requested the medical records from Cornerstone. After he got them, he hired a nursing consultant to go through them. The attorney's testimony revealed that the nursing consultant took the file out of the office to organize it, and the consultant inserted some sheets and removed others. The sheets inserted by *477 the nursing consultant were "date sheets," and the records removed were those "which the nurse said were not eventful." The records introduced were copies of copies.
Reliance on these records was in error because their trustworthiness was not established. The testimony of Ms. Dragon's daughter and son failed to establish a prima facie case of negligence against Cornerstone. Even if we could consider the daughter's statement that an aide told her that it was her first day at work and that she dropped the resident in a shower, this testimony did not address the damages element of duty-risk. Absent any medical evidence of Ms. Dragon's injuries that allegedly were caused by the negligence, there is no competent evidence sufficient to prove all elements of duty-risk and allow recovery against Cornerstone. There was no medical evidence at all, except hearsay, of any injury or treatment of any injury.
We find that the Plaintiffs failed to establish a prima facie case of negligence against the nursing home. The trial court erred in confirming the default judgment. Because we vacate the default judgment, we do not address the assignments of error pertaining to the trial court's denial of Cornerstone's motion for new trial.
For the above reasons, the confirmation of default judgment is vacated, and this matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to Plaintiffs.
JUDGMENT VACATED AND REMANDED.