819 So.2d 1158 (2002)
Marie CORNISH
v.
DOCTORS CARE, LLC.
No. 2002-CA-0285.
Court of Appeal of Louisiana, Fourth Circuit.
June 12, 2002.
Rehearing Denied June 28, 2002.
*1159 Thomas Corrington, The Corrington Law Firm, New Orleans, LA, for Plaintiff/Appellee.
C. William Bradley, Jr., Nicole Duarte Martin, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III and Judge DENNIS R. BAGNERIS, SR.).
MIRIAM G. WALTZER, Judge.

STATEMENT OF THE CASE
Marie Cornish filed suit against Doctors Care, LLC (the Clinic), for damages allegedly caused by the Clinic's negligence in having failed to report timely the results of a test for the HIV virus. According to the petition, Dr. Kenneth Wiley, who operates the Clinic, ordered the test in early April 2001. The positive test results were reported to the Clinic in late April, but were not reported to Dr. Wiley or to Ms. Cornish until late July 2001. Ms. Cornish claims that as a result of this delay, she did not receive medication that could have *1160 prevented the HIV virus from evolving into AIDS. Ms. Cornish does not claim medical malpractice, but rather simple clerical negligence on the part of the Clinic.
The Clinic was personally served with a copy of the petition on 16 August 2001; however, the Clinic made no appearance. On 4 September 2001, Ms. Cornish moved for a preliminary default. The trial court held a hearing on the confirmation of the default on 26 September 2001, and rendered judgment in favor of Ms. Cornish in the amount of $2,500,000.00 together with costs and legal interest from judicial demand. From that judgment, the Clinic appeals. Because Ms. Cornish failed to present a prima facie case to the trial court, we reverse and remand the case for further proceedings in the trial court.

STATEMENT OF FACTS
Ms. Cornish testified that she is a forty-year-old mother of two grown children, and grandmother of two. In early April 2001, she was tested at St. Charles General Hospital for HIV. She testified that she understood the 19 April 2001 positive test results went to the Clinic, but she was not notified for several months. Counsel asked Ms. Cornish, "Ms. Cornish, you have been told by your medical services now that because you were not immediately given HIV treatment medication, that this condition has now gone into full blown AIDS?" Ms. Cornish responded, "Yes." The following colloquy ensued:
Counsel: Have they [unidentified] told you how long you have to live?
Ms. Cornish: They didn't give me anymore [sic] than a year.
Counsel: And if you had taken the medication you could have lived 20 years with the progress that they have made using AIDS drugs; is that correct?
Ms. Cornish: Yes.
Under questioning by the court, Ms. Cornish testified that she had been unemployed since 1990 and is covered by Medicaid. The trial judge asked counsel if he knew Ms. Cornish's life expectancy. Counsel replied, "According to the [unspecified] mortality tables, she has a life expectancy of 22 to 24 years." The trial judge then concluded, "I'll order judgment in the amount of two million five hundred.... [B]ased on the Court's own calculation that this woman has approximately a 24 year life expectancy, $84,000 per year is basically what the Court is awarding her, which I think is significant and less than the value of one's enjoyment of their life."
The record includes the following as plaintiffs sole exhibit:
St. Charles General Hospital "Conditions of Services" showing Ms. Cornish's admit on 10 April 2001;
Memorial Medical Center positive HIV report on Ms. Cornish dated 19 April 2001;
ReliaGene Technologies positive HIV report on Ms. Cornish dated 23 July 2001.

BURDEN OF PROOF
The Louisiana Code of Civil Procedure provides in article 1702:
Art. 1702. Confirmation of default judgment
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
B. ... (2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie *1161 case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment....
D. When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.
A plaintiff seeking to obtain a default judgment must establish the elements of a prima facie case with competent evidence, as fully as though each allegation of the petition had been denied. The competent evidence must be sufficient to convince the court that it is probable that he would prevail on a trial on the merits. Gleason v. Palmieri, 97-0624, p. 3 (La. App. 4 Cir. 12/23/97), 707 So.2d 57, 58.
While there is a presumption that the record supports a default judgment, that presumption does not attach where the record indicates otherwise. Id. See also, Orleans Sheet Metal Works and Roofing, Inc. v. Landis Co., Inc., 96-0029, pp. 2-3 (La.App. 4 Cir. 7/24/96), 678 So.2d 73, 74.
Where, as here, the confirmation hearing was transcribed for our review, it is incumbent upon this Court to determine whether the evidence supporting the judgment is both competent and sufficient to sustain the plaintiffs burden of proving a prima facie case. McRay v. Booker T. Washington Nursing Home, 30,399, p. 3 (La.App. 2 Cir. 4/8/98), 711 So.2d 772, 777.
While a plaintiffs testimony may support a default judgment, hearsay evidence may not. McRay, 711 So.2d at 777.

STANDARD OF REVIEW
Judgments of default are reviewed generally under the manifest error standard. Band v. First Bankcard Center, 94-0601 (La.App. 4 Cir. 9/29/94), 644 So.2d 211, writ granted in part with order, on other grounds, 94-3062 (La.2/9/95), 650 So.2d 738. We are mindful that the initial review function of an appellate court is not to decide factual issues de novo, and is limited to a determination of manifest error. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings. Rosell, 549 So.2d at 844. The Louisiana Supreme Court held in the landmark Rosell case:
Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-845.
Ms. Cornish notes in brief that the manifest error standard is applicable to this case, and the Clinic does not suggest a different standard.
ASSIGNMENT OF ERROR: The trial court erred in confirming a $2.5 million dollar default judgment in a medical malpractice case where plaintiff's only causation evidence was her hearsay statement that she would not have developed AIDS had she received timely notification and treatment of her HIV positive condition.
We reject the Clinic's characterization of Ms. Cornish's claim as one for medical malpractice. Clearly, the damage claimed had medical/physical consequences to Ms. Cornish. However, the fault claimed is simple negligence by Clinic clerical personnel, *1162 not medical professionals, who allegedly neglected to open the package of reports and forward Ms. Cornish's unfortunate test results to her physician. Therefore, we do not consider the Clinic's argument under Pfiffner v. Correa, 94-0924 (La.10/17/94), 94-0963 (La.10/17/94) and 94-0992 (La.10/17/94), 643 So.2d 1228 (La.1994) to be relevant to this case.
However, we do not find that Ms. Cornish presented sufficient competent evidence of causation to establish a prima facie negligence case against the Clinic. In order to sustain a claim of negligence under LSA-C.C. arts. 2315 and 2316, a plaintiff must prove five separate elements:
(1) The defendant had a duty to conform his conduct to a specific standard (the duty element);
(2) The defendant failed to conform his conduct to the appropriate standard (the breach of duty element);
(3) The defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
(4) The defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
(5) Actual damages (the damages element.) Roberts v. Benoit, 605 So.2d 1032 (La.1991).
To meet the cause-in-fact element, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident probably would not have occurred. Id.
The standard negligence analysis we employ in determining whether to impose liability under La. C.C. art. 2315 is the duty/risk analysis, which consists of the following four-part inquiry:
1. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e. was it a cause-in-fact of the harm that occurred?
2. Did the defendant(s) owe a duty to the plaintiff?
3. Was the duty breached?
4. Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94) 646 So.2d 318, 321-322.
Once a duty and a breach thereof have been established, the court must then determine if the breach is a legal cause of the victim's injuries. The Roberts court analyzed legal cause in terms of `proximate cause' and `cause in fact' and concluded that Louisiana has merged the two into an `ease of association' test. Roberts, supra at 1045, 1055. Although not based entirely on foreseeability, the test does encompass that factor. Essentially, the inquiry is `How easily does one associate the plaintiff's complained of harm with the defendant's conduct.' Carr v. City of New Orleans, 626 So.2d 374 (La.App. 4 Cir.1993).
Cause in fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause-in-fact. Fowler v. Roberts, 556 So.2d 1,5 (La.1989). Negligent conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 482, 137 So.2d 298, 302 (1962).
Against this background, we must determine whether the evidence provided by Ms. Cornish is sufficient and competent to establish a negligence claim against the Clinic. If we accept as a proven fact that *1163 the Clinic owed a duty to Ms. Cornish to advise her of the first test results, which the Clinic received from Memorial Medical Center on 19 April, 2001, and breached that duty by failing to so advise her until it had received the second set of results, these from ReliaGene Technologies on 23 July, 2001, we cannot escape the conclusion that the sole evidence of causation contained in this record is both incompetent hearsay and legally insufficient to establish causation under LSA-C.C. arts. 2315 and 2316.
Ms. Cornish contends that the only hearsay evidence is her testimony concerning the reason why she was not told of the test results. We disagree.
The trial court concluded that Ms. Cornish proved by a preponderance of evidence that had she received treatment for her HIV positive condition on 19 April rather than four months later, she would have survived to her alleged normal life expectancy of twenty-four additional years[1]. We find nothing in the record to support that conclusion. Ms. Cornish relies on "common knowledge" that "there is no cure for AIDS and that the mortality rates are much greater once the virus develops into AIDS rather than simply HIV." Even if this were a matter of judicial notice, which it is not, this "common knowledge" does not support the conclusion that early intervention with state-of-the-art treatment in April would have guaranteed Ms. Cornish a normal life expectancy, allegedly of an additional twenty-four years. There is no testimony as to how rapidly the HIV infection would develop into AIDS and how quickly death would eventuate in this particular individual's case. There is no evidence of how rapidly or aggressively Ms. Cornish should have been treated to insure a normal life expectancy. The testimony in the record, outlined previously in our statement of facts, is purely conjectural as to the causation element.
There is no evidence in the record other than hearsay that the test results were delivered in bulk and not opened timely. Neither is there any competent evidence of the nature or extent of diminution to Ms. Cornish's life expectancy that was occasioned by the four-month delay in commencing treatment. We have only hearsay evidence from Ms. Cornish that her life expectancy has been reduced to only one year.

CONCLUSION AND DECREE
Based upon our careful review of the entire record, we find that a reasonable factual basis does not exist for the finding of the trial court that the alleged delay in notifying Ms. Cornish and her physician of the positive HIV test results caused Ms. Cornish to lose twenty-four years of life expectancy. Furthermore, the judgment of the trial court is manifestly erroneous under the present standard of appellate review. Stobart, 617 So.2d at 882. This case does not present an issue of credibility of the witness, but rather of sufficiency of the evidence.
Where, as here, the plaintiff has failed to establish a prima facie case against the defendant at the default confirmation hearing, the case should be remanded to the trial court for further proceedings. Band v. First Bankcard Center, 94-3062 (La.2/9/95), 650 So.2d 738. Accordingly, we vacate the default judgment and remand the case to the trial court for further proceedings. Costs of this appeal are assessed against the appellee.
*1164 DEFAULT JUDGMENT VACATED; CASE REMANDED TO TRIAL COURT.
NOTES
[1] We note that there is nothing in the record except counsel's unsworn statement that an unidentified life expectancy table shows Ms. Cornish to have had a life expectancy of 24 to 26 years.