728 So.2d 966 (1999)
Yvonne BILLINGTON, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
No. 31,585-WCA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
*967 Wallace & Long by William R. Long, Shreveport, Counsel for Plaintiff-Appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Julia A. Mann, Shreveport, Counsel for Defendant-Appellee.
Before NORRIS, STEWART and CARAWAY, JJ.
NORRIS, Chief Judge.
The claimant, Yvonne Billington, appeals a judgment rejecting her demand for worker's compensation weekly benefits and awarding only one post-accident doctor visit. For the reasons expressed, we affirm.

Factual background
Ms. Billington was employed at the General Motors Shreveport plant as a line worker earning $18.23 an hour. In December 1995 she was transferred to the cruise control line. Line workers install cruise control manually, but may use a "battery gun" or air tool to screw in the end cap. Ms. Billington is right handed.
On December 19, she reported to the medical department[1] that she had sustained an acute sprain or strain to her left hand over a week earlier, on December 11. The Union representative referred her to an orthopedist, Dr. J.E. Smith. Ms. Billington went to see Dr. Smith, again describing an injury to her left hand. Dr. Smith gave her antiinflammatories and felt she could resume work. Two days later, however, GM started its Christmas shut-down, and Ms. Billington's last day of work was December 22. To this point, her complaints to both the medical department and to Dr. Smith concerned her left hand.
One day before she was to return to work, Ms. Billington underwent an EMG and nerve conduction study from Dr. Jerry Smith (Dr. J.E. Smith's son). These tests found nothing wrong with her left hand, but "possible early carpal tunnel syndrome" in the right hand. Dr. J.E. Smith released her to resume work the next day, as scheduled, but restricted her from various right hand activities: repetitive motion, pushing and pulling, and use of power tools. He admitted, however, that she had not complained of any pain or discomfort in her right hand.
*968 The next day, January 4, 1996, Ms. Billington went to the medical department and filled out an employee's report.[2] This again referred to an accident of December 11, stating that she had to "shot [sic] a gun in the right hand," but not saying which hand she actually injured. She never returned to work; her supervisor testified that there are "no one-arm jobs at GM." On January 10, GM's comp coordinator filed an Employer's Report[3] with LDOL, stating that Ms. Billington's work was "connecting cruise control" and she was injured by "grasping."
Later, on January 14, Ms. Billington filed a claim for sickness and disability benefits with GM's health insurer, Met Life.[4] Here she wrote that she was disabled because there were no jobs within her work restriction; she has to use a 20-lb. torque gun with her right hand. She began collecting on this policy effective January 9; these payments exceeded her comp rate, and GM never paid her anything designated as comp. To this point, none of the claim documents (exhibits "G," "H" or "I") mentioned any injury to Ms. Billington's right hand.
On January 31, Ms. Billington returned to Dr. Smith and complained, for the first time, of "tingling in the right hand in the morning, with pain." Dr. Smith gave her splints to wear at night. By May, he testified, she was "doing well, in some pain," but the pain was "not debilitating." He scheduled a carpal tunnel decompression, but GM denied this for comp. Feeling another opinion was needed, Dr. Smith referred her to Dr. John Knight of the Louisiana Hand and Upper Extremity Institute.
Ms. Billington did not see Dr. Knight until November 21, 1996, telling him that she started having problems with "her hands," including numbness and tingling of "all digits," in December 1995. Dr. Knight recorded her current complaint of pain in the left wrist, and numbness and tingling in both hands. He found no motor weakness, normal wrist motion, and slight instability in the left wrist only (which he attributed to a possible ligament tear). He conducted a nerve percussion test which found carpal tunnel syndrome in both wrists. He recommended surgery to the left wrist to repair the ligament tear and to decompress the median nerve; this should be followed, a month or so later, by surgery to the right wrist.
GM did not approve these operations for comp. Ms. Billington filed the instant disputed claim in December 1996. She alleged that repetitive work on the production line caused her carpal tunnel syndrome.
In a discovery deposition, she agreed that all her initial complaints concerned acute pain in the left hand, and that she did not mention right hand pain until Dr. Smith diagnosed possible carpal tunnel syndrome. At trial, however, Ms. Billington testified that her pain was in the right hand all along, and insisted that she had reported right hand pain to Drs. Smith and Knight. Cross examined about this inconsistency, she stated she could not remember giving that deposition testimony. She also could not explain why her Accident/Illness report, Employee's Report of occupational injury, and claim for Sickness and Accident benefits, all submitted within one month of the onset, failed to mention any pain in her right hand. Ms. Billington did not dispute GM records showing that she made three comp claims in 1995, that she had been transferred often, and that at the time of the instant claim she was on the verge of discipline for poor job performance.
The WCJ ruled from the bench that Ms. Billington's testimony was "wholly inadequate to establish anything." The WCJ cited her "subjective exaggerations and her inability to provide a consistent reliable history," along with her all-too-frequent lapses of memory, as damaging her credibility. The WCJ accepted the affirmative diagnosis of carpal tunnel syndrome, but concluded it was not disabling: Dr. Smith explicitly said the condition was "not debilitating," and Dr. Knight felt it was "not that bad," while Ms. *969 Billington's post-diagnosis complaints were undermined by her credibility deficit and by the fact that she "repeatedly and continually through 1995 tried to find reasons to get off work and get benefits." The WCJ therefore denied the claim for disability benefits, awarded only Dr. Smith's initial post-injury examination, and rejected the claim for penalties and attorney fees.

Applicable law
A claimant is entitled to temporary, total disability ("TTD") benefits if she sustains a work-related injury producing temporary total disability to engage in any self-employment or occupation for wages. R.S. 23:1221(1)(a). When the claimant is not working, she must prove by clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment or self-employment. R.S. 23:1221(1)(c). To prove a matter by clear and convincing evidence means to "demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." Mitchell v. A T & T, 27,290 (La.App. 2 Cir. 8/28/95), 660 So.2d 204, writ denied 95-2474 (La.12/15/95), 664 So.2d 456, and citations therein.
A claimant asserting an occupational disease must prove by a preponderance of the evidence that she suffers a disability which is related to the employment-related disease, that she contracted the disease during the course of her employment, and that the disease is a result of the work performed. La. R.S. 23:1031.1 A; Hymes v. Monroe Mack Sales, 28,768 (La.App. 2 Cir. 10/30/96), 682 So.2d 871, and citations therein. Occupational disease specifically includes injuries due to work-related carpal tunnel syndrome. R.S. 23:1031.1 B. The claimant must nevertheless prove that the condition is disabling. Jones v. A T & T, 28,059 (La.App. 2 Cir. 2/28/96), 669 So.2d 696.
In the event of a compensable injury, the employer is obligated to furnish all necessary medical expenses and any nonmedical treatment recognized by the laws of the State as legal. La. R.S. 23:1203 A. The claimant must prove by a reasonable preponderance of the evidence the necessity and the relationship of the treatment provided by the physician to the work-related accident. Lynn v. Berg Mechanical Inc., 582 So.2d 902 (La.App. 2 Cir.1991), and citations therein.
The WCJ's findings are subject to the manifest error rule. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375. Under this rule, the reviewing court does not decide whether the findings are right or wrong, but whether they are reasonable. Stobart v. State, 617 So.2d 880 (La.1993). When they are based on credibility calls, the manifest error rule demands great deference to the WCJ's findings. Id. A credibility call may be reversed only when documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit it. Rosell v. ESCO, 549 So.2d 840 (La.1989). In the absence of such a showing, the WCJ's choice between two permissible views of the evidence will not be disturbed. Hymes v. Monroe Mack Sales, supra.

Discussion
By her second assignment of error Ms. Billington urges the WCJ erred in failing to award TTD benefits. She contends that carpal tunnel syndrome is specifically recognized in R.S. 23:1031.1 B as an occupational disease, and concedes that the WCJ's findings are subject to manifest error review. She nonetheless argues that the documentary evidence, taken as a whole, permits the "inference" that she actually complained of right hand pain from the start, and thus does not contradict her trial testimony.
The WCJ rejected Ms. Billington's claim in large part because of her major credibility problems. As always, the WCJ had the opportunity to hear and watch the claimant testify, so her appraisal of Ms. Billington's credibility will not be easily disturbed. Contrary to the assertion in brief, the documents do not undercut the WCJ's findings. The claimant's initial report, submitted on December 19, refers only to her left hand. On her first doctor visit, December 20, Dr. Smith recorded a complaint of injury to her left hand. Her next two documents, January 4 *970 and 14, 1996, fail to specify which hand was injured. Only after Dr. Smith discovered by EMG a "possible early carpal tunnel syndrome in the right hand" did she report to him on January 31 "tingling with pain" in the right hand. Many months later, she told Dr. Knight she had problems in her hands since December, but her principal complaint was still pain in the left. Taken as a whole, this evidence amply supports the WCJ's finding that Ms. Billington never complained about her right wrist until Dr. Smith's tests turned up an asymptomatic carpal tunnel syndrome, and that she subsequently gave Dr. Knight an inaccurate history.
The documentary evidence also showed that Ms. Billington took nearly four weeks of leave in February 1995 on a comp claim for a shoulder injury, over 30 days of leave in April and May 1995,[5] and over two weeks for a lower back "acute sprain/strain" in September 1995.[6] On none of these occasions did she report any hand pain to the medical department. The WCJ found this less consistent with the normal, long-developing occupational disease of carpal tunnel syndrome than with a claimant looking for a diagnosis to support an award of comp. Ms. Billington never once testified that her right hand pain was disabling; her remarks to Drs. Smith and Knight clearly show that the condition is "not debilitating." On this record the WCJ was not wrong to conclude that Ms. Billington simply did not wish to work, and was groping for any diagnosis that would obtain that result.
The evidence does not clearly and convincingly prove that Ms. Billington is disabled by carpal tunnel syndrome of her right hand. With the further complication of her credibility problems, the WCJ was not clearly wrong to reject the claim for TTD. This assignment lacks merit.
By her first assignment Ms. Billington urges the WCJ erred in failing to find that she developed an occupational disease, carpal tunnel syndrome, as a result of her employment. While it is true that the WCJ concluded her oral reasons by stating the claimant failed to prove an occupational disease or injury resulting from her work, R.p. 121, the major thrust of the ruling was to accept Dr. Smith's diagnosis of carpel tunnel but reject that it was disabling. See, R.pp. 109-112, 116-117. For the reasons already discussed, this is sufficient ground for denying the claim. However, even if the WCJ actually found no occupational disease, this conclusion would not be plainly wrong. Despite R.S. 23:1031.1 B, the instant record is devoid of evidence that Ms. Billington actually performed, for any length of time, work duties that could cause carpal tunnel syndrome, and Dr. Smith stated that activities other than work could cause it. Notably, there is no evidence of what happened between December 22, 1996, her last day of work, and November 1997, the date of Dr. Knight's diagnosis, an 11-month period in which her right hand apparently evolved from asymptomatic to painful. In short, we would not disturb the WCJ's refusal to find causation.
By her third assignment Ms. Billington urges the WCJ erred in failing to award medical expenses. Her brief, however, advances no argument that any additional doctor visits or the proposed surgeries are necessary. Lynn v. Berg Mechanical Inc., supra. Our independent review of the record fails to find any basis to award medicals for a condition which is apparently asymptomatic except for complaints which the WCJ dismissed as unbelievable. Moreover, the record does not show which, if any, of the claimant's bills remain unpaid. Chitman v. Davison Trucking, 28,073 (La.App. 2 Cir. 2/28/96), 669 So.2d 671. This assignment lacks merit.
By her fourth assignment, and most expansive argument, Ms. Billington contests the denial of penalties and attorney fees. She asserts that GM's comp coordinator, Ms. Coleman, rejected the claim simply because the three documents handwritten by the claimant in December 1995 and January 1996 did not clearly identify any problem with her right hand; had she fully investigated the case, e.g., by calling Dr. Smith, she would *971 have found a compensable injury and initiated TTD and medical benefits. We will not belabor the obvious; by submitting to GM three documents which were utterly silent as to any problem with her right hand, Ms. Billington created the evidence which "reasonably controverted" her own claim. La. R.S. 23:1201.2 F. The rejection of penalties and attorney fees was completely warranted.

Conclusion
For the reasons expressed, the judgment is affirmed at Ms. Billington's costs.
AFFIRMED.
NOTES
[1] Accident/Illness report, GM Medical Department, Exhibit "J."
[2] Employee's report of occupational injury or disease, GM form, Exhibit "H."
[3] Louisiana Department of Labor Form 1007, Exhibit "I."
[4] Claim for Sickness and Accident Benefits, Met Life form, Exhibit "G."
[5] Personnel Plant History Inquiry, Exhibit "K."
[6] Accident/Illness Report, Exhibit "L."