825 So.2d 1271 (2002)
Cecil H. COX, Plaintiff-Appellant
v.
ROOFING SUPPLY, INC., Defendant-Appellant.
No. 36,275-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 14, 2002.
*1273 Donald J. Anzelmo, Monroe, for Defendant-Appellant.
Cecil H. Cox, for Plaintiff-Appellant.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
NORRIS, Chief Judge.
The claimant, Cecil Cox ("Cox"), sued his employer, Roofing Supply, Inc. ("Roofing Supply"), for workers' compensation benefits arising from an occupational disease. The WCJ found that one day of symptoms were related to an occupational exposure but denied Cox's claims for temporary total disability benefits and medical benefits past the one day. The WCJ further found that Cox did not violate La. R.S. 23:1208. Both sides appeal. For the following reasons, we affirm.

Facts
In 1994, Cox began working at Roofing Supply. He performed various duties such as truck driving and working in the sheet metal shop. Roofing Supply's records reflect that he began performing some soldering work in August of 1997. Cox testified that he often complained about the working conditions and having a myriad and broad array of illnesses throughout his employment. However, Roofing Supply's owner and Cox's supervisor, Gerald Sayres, referred to him as a "constant complainer," perceiving his complaints as a way of trying to get out of doing work frequently. In November 1998, Cox read some warning labels on a shipment of lead and thereafter related all of his medical illnesses to soldering work.
Cox testified that shortly after arriving to work at Roofing Supply around 9:00 am on January 31, 2000, he was exposed to forklift exhaust fumes. He alleged that due to lack of ventilation in his work space area, he became "sick from the exhaust fumes." After informing Sayres of his malaise, he was sent home.
Instead of seeking immediate medical assistance, he bought some Gatorade and gum, then went to the drivers' license bureau and obtained his commercial driver's license around 10:30 am. Around 1:00 pm, he went for a DOT physical and drug screen, but this had been canceled by Sayres. He then went home and proceeded to drink, by his own estimate, about five beers. It was not until 3:40 pm later that afternoon that he sought medical attention from his general practitioner, Dr. Harrington, who noted that Cox had consumed a significant quantity of alcohol earlier that day. Dr. Harrington ultimately sent for an ambulance to pick up Cox due to his complaints of sharp left-sided chest pain and shortness of breath.
Cox was taken to Willis Knighton Bossier Hospital and seen by various physicians, including a neurologist and toxicologist, Dr. Mary McWilliams. Later that night, he was admitted into the hospital and remained for the following two days. During his hospitalization, he admitted to drinking a six-pack of beer a day.
Cox was discharged on February 2, 2000. Nine months later, in October 2000, he underwent a FCE ordered by Dr. Harrington *1274 which concluded that he was able to perform light to medium duty jobs. However, he has never attempted to go back to work since January 31, 2000.
Before and after the alleged exposure, Cox has undergone several other medical exams by a multitude of doctors to whom he complained of toxic exposure at work; none of these medical tests have ever conclusively determined that his symptoms are the result of any work related toxic exposure.

Procedural history
On February 25, 2000, Cox filed a disputed claim for compensation with the OWC. On May 3, 2000, Roofing Supply filed its answer denying all of Cox's claims. By amended answer of September 28, 2000, it alleged that Cox had forfeited his rights to workers' compensation pursuant to La. 23:1208 due to false statements or representations in furtherance of his claim for benefits.
On May 31, 2001, Cox's attorney, Charles Phillips, filed a motion to withdraw from representation. Less than a month later, Lacey Wallace, enrolled as Cox's new counsel. On the morning of trial on August 30, 2001, Cox filed a motion to terminate Wallace's legal services and to represent himself at trial.
In a pretrial statement, Cox asked Roofing Supply to stipulate that it had been fined by OSHA for safety violations pursuant to Cox's complaint. On August 30, 2001, Roofing Supply filed a motion in limine to exclude from evidence this report and any references to it. Prior to the trial, the WCJ held a hearing to consider the admissibility of the OSHA report. The WCJ excluded it from evidence as inadmissible hearsay under La. C.E. art. 803(8)(b)(iv) and because Cox had never listed it as an exhibit in his pretrial statement. At the trial on the merits, four witnesses testified. Cox called his wife, Sandra Cox, and Dr. Mary McWilliams; Roofing Supply called Gerald Sayres and Cox himself.
On December 7, 2001, the WCJ ruled orally that Cox's initial visit to the hospital on January 31, 2000 "was due to an alleged occupational exposure incurred while in the employment of Roofing Supply." She therefore awarded medical benefits for his hospitalization on that date, subject to credit for expenses covered by Cox's wife's health insurance carrier. The WCJ denied Cox's claim for temporary total disability benefits and medical expenses except for those incurred on January 31, 2000. The WCJ rejected Roofing Supply's claim for forfeiture of benefits, finding no evidence of a La. R.S. 23:1208 violation by Cox. Finally, the WCJ assessed all court costs against Roofing Supply, including Dr. McWilliams's expert fee of $450.00. Judgment in accordance with oral reasons was rendered on December 12, 2001.
Both sides have devolutively appealed. Roofing Supply asserts by two assignments that Cox failed to prove an occupational exposure on January 31, 2000 and that he made a willful misrepresentation to receive compensation benefits. Cox asserts that the WCJ failed to find that he was exposed to toxic fumes prior to January 31, 2000; he also raises a number of procedural claims.

Applicable law
An employee is entitled to compensation benefits if he receives a personal injury by accident "arising out of and in the course of his employment." La. R.S. 23:1031 A. A claimant asserting an occupational disease must prove by a preponderance of the evidence that he suffers a disability which is related to the employment-related disease, that he contracted the disease during the course of his employment, and that the disease is a result *1275 of the work performed. La. R.S. 23:1031.1 A; Billington v. General Motors Corp., 31,585 (La.App. 2 Cir. 2/24/99), 728 So.2d 966. The causal link between the employee's occupational disease and work-related duties must be established by a reasonable probability. Shields v. GNB Technologies, Inc., 33,911 (La.App. 2 Cir. 10/4/00), 768 So.2d 774. The claimant will fail if he shows only a possibility that the employment caused the disease, or that other causes not related to the employment are just as likely to have caused the disease. Id.
In the event of a compensable injury, the employer is obligated to furnish all necessary medical expenses and any nonmedical treatment recognized by the laws of the State as legal. La. R.S. 23:1203 A. The claimant must prove by a reasonable preponderance of the evidence the necessity and the relationship of the treatment provided by the physician to the work-related accident. Billington v. General Motors Corp., supra. A claimant's own testimony may be sufficient to prove causation by a preponderance of evidence, provided: (1) no other evidence discredits or casts serious doubt upon the claimant's version of the incident, and (2) the claimant's testimony is corroborated by circumstances surrounding the alleged incident. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992); Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App. 2 Cir. 11/1/95), 663 So.2d 543, writ denied, 97-0671 (La.5/9/97), 693 So.2d 768.
The WCJ's findings are subject to the manifest error rule. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Stobart v. State, 617 So.2d 880 (La.1993). When they are based on credibility calls, the manifest error rule demands great deference to the WCJ's findings. Stobart v. State, supra. A credibility call may be reversed only when documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit it. Rosell v. ESCO, 549 So.2d 840 (La.1989). In the absence of such a showing, the WCJ's choice between two permissible views of the evidence will not be disturbed. Billington v. General Motors, Corp., supra; Hymes v. Monroe Mack Sales, 28,768 (La. App. 2 Cir. 10/30/96), 682 So.2d 871.
The workers' compensation act is remedial in nature and provisions of the workers' compensation law should be liberally construed in favor of the claimant. Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96), 674 So.2d 947; Brown v. Ruskin Mfg. Co., 33,015 (La.App. 2 Cir. 4/5/00), 756 So.2d 667. Although compensation laws are to be construed liberally in the claimant's favor, the worker's burden of proof is not relaxed. Martin v. Olsten Indus. Serv., 98-0463 (La.9/18/98), 718 So.2d 404; Brown v. Ruskin Mfg. Co., supra.
Forfeiture of benefits for misrepresentation is governed by La. R.S. 23:1208, which provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *

*1276 E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7; Smith v. Riverwood Int'l, 35,727 (La. App. 2 Cir. 2/27/02), 810 So.2d 1175, writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 101.
Records and reports of a public office or agency setting forth "[f]actual findings resulting from an investigation made pursuant to authority granted by law" are exceptions to the hearsay rule and are admissible at trial. La. C.E. art. 803(8)(a)(iii). However, such findings are excluded from this exception to the hearsay rule and are not admissible when they result "from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based." La. C.E. art. 803(8)(b)(iv). Thus, while factual findings from a general investigation may be admissible, factual findings from a specific or particular investigation are inadmissible under the public records exception. Green v. Connor, 94-2120 (La.10/7/94), 644 So.2d 618; McRay v. Booker T. Washington Nursing Home, 30,399 (La.App. 2 Cir. 4/8/98), 711 So.2d 772. A special investigation is distinguishable from a general investigation in that the former is an investigation into the circumstances that give rise to the proceeding in question. McRay v. Booker T. Washington, supra.

Discussion: Occupational disease
Both Roofing Supply and Cox assign as error the WCJ's finding of an occupational exposure on the sole date of January 31, 2000. Roofing Supply argues that the WCJ erred in finding that Cox sustained his burden of proving an occupational exposure at work on January 31, 2000, as well as in awarding medical expenses for that date and court costs. Conversely, Cox argues that the WCJ erred in failing to award compensation benefits and additional medical benefits, claiming his symptoms lasted much longer than one day; he also argues that the WCJ erred in failing to find toxic exposure prior to the January 31, 2000 incident.
Roofing Supply points out that Dr. McWilliams was the only physician to testify at trial and she testified that there was no medical evidence to support a finding that Cox's physical complaints were the result of exposure to exhaust fumes, lead, or muriatic acid at work. However, it was not an abuse of the WCJ's discretion to find that Cox suffered a work-related accident by inhaling diesel exhaust fumes on January 21, 2000.
Before Cox came to work on that day, he testified that he was feeling fine. However, upon inhaling the forklift fumes, he became sick and eventually sought medical attention for his symptoms. Cox's own testimony is corroborated by circumstances surrounding this incident and no other evidence casts serious doubt on his version of what happened on January 31, 2000. See, Bruno v. Harbert Int'l Inc., supra; Stevens v. Wal-Mart Stores, supra. It was within the WCJ's discretion to find that the claimant's undisputed testimony of the events which took place that morning showed a reasonable possibility causal connection between his exposure to the forklift fumes and his subsequent nausea, shortness of breath, and ultimate hospitalization. *1277 See, Quinones v. USF & G, 93-1648 (La. 1/14/94), 630 So.2d 1303; Jackson v. Creger Automotive Co., 29,249 (La.App. 2 Cir. 4/2/97), 691 So.2d 824, writ denied 97-1436 (La. 9/26/97), 701 So.2d 984.
Furthermore, it was also within the WCJ's discretion to find that Cox's symptoms lasted for a single day, there was no toxic exposure prior to the January 31, 2000 incident, and Cox did not suffer from an occupational disease. See, Rosell v. ESCO, supra. Even though Cox drank a good bit of beer, which may have contributed to his shortness of breath, the fact remains he felt bad enough to seek medical attention that day. Conversely, Cox's blood serum level tests run both before and after the alleged exposure on that day revealed his blood lead levels were well within normal range.[1] Additionally, the FEC cleared him for light to medium duty.
The WCJ reviewed and made note of Cox's vast collection of medical reports from a litany of physicians in her oral reasons for judgment. However, the WCJ only awarded him medical expenses for his hospitalization on January 31, 2000 due to his symptoms experienced on that particular day. As the WCJ noted, the unequivocal testimony adduced at trial by Dr. McWilliams was that none of Cox's medical problems were due to prolonged exposure to lead, acid, or carbon monoxide. While he has been seen by a myriad of doctors for a litany of different symptoms, none of the medical tests performed on Cox has attributed any of his symptoms to his employment with Roofing Supply. Simply put, Cox failed to prove that, prior to January 31, 2000, he suffered from a disability related to an employment-related disease contracted during the course of his employment as a result of the work he performed. See, La. R.S. 23:1031 A; Billington v. General Motors, Corp., supra. Evidence adduced specifically supports the WCJ's finding that Cox failed to prove lead or muriatic acid poisoning, and in fact proved only one day of discomfort for breathing exhaust fumes. Therefore, we find that the WCJ's findings of fact to be entirely reasonable and without manifest error. Chaisson v. Cajun Bag & Supply Co., supra. These assignments of error by both parties are without merit.

Forfeiture
By its last assignment of error, Roofing Supply urges that the WCJ erred in failing to find a La. R.S. 23:1208 violation by Cox. Specifically, Roofing Supply argues that Cox made false representations in order to receive compensation benefits by withholding certain medical records, evidencing his prior beer intake earlier that day, from Dr. McWilliams. He also failed to reveal his alcoholic consumption to Dr. McWilliams herself as well as in his sworn deposition testimony. Dr. McWilliams explained that such information was important, because his symptoms were probably the result of his drinking rather than any work-related toxic exposure.
The WCJ stated, without elaboration, that Cox did not violate La. R.S. 23:1208; she must have concluded that his failure to tell Dr. McWilliams about his beer intake was neither willful nor for the purpose of obtaining benefits. Notably, he did not withhold this information from the first physician he saw that day, Dr. Harrington. *1278 Cox also revealed to another Willis Knighton physician during his hospitalization that he drank a six pack of beer every day. He likely would have withheld such information had his intent been fraud. Given the WCJ's superior position to assess Cox's credibility and the strict construction of this penal statute, we cannot say the WCJ was plainly wrong to reject this claim. Rosell v. ESCO, supra; Billington v. General Motors Corp., supra.

Procedural issues
By his fourth assignment of error Cox argues that the WCJ erred in excluding an OSHA report into evidence because it is a public record. This OSHA report was made pursuant to an investigation prompted by Cox himself into the circumstances of Roofing Supply's workplace environment. OSHA's factual findings resulted from its investigation into circumstances that gave rise to the instant proceeding; thus, it is considered a "special investigation." Green v. Connor, supra; McRay v. Booker T. Washington Nursing Home, supra. Under La. C.E. art. 803(8)(b)(iv), this report is not within the public records exception to hearsay and should not have been admitted. The WCJ was not manifestly erroneous in excluding the OSHA report. This assignment error is without merit.
By his first assignment of error, Cox argues that the WCJ erroneously denied him the opportunity to obtain new counsel or to obtain a continuance of the trial. He argues that his then presently enrolled counsel "quit less than 24 hours before the trial." However, the record reveals that Cox actually filed a motion to terminate the legal services of his own attorney, Lacey Wallace, the morning of the trial. This motion asked for permission to represent himself, and obtained an order to this effect from the WCJ. At trial, Cox reiterated that he wished to represent himself. Cox never requested a new attorney nor did he request a continuance. For these reasons, this assignment of error is without merit.
By his third assignment, Cox argues that the WCJ improperly excluded one of his witnesses, Richard Brown, a former Roofing Supply employee, from testifying. As the WCJ noted, this witness was listed in neither Cox's pretrial statement nor his witness list. Cox's brief advances no argument why this witness should not have been excluded. The WCJ's decision to disallow Brown from testifying was wholly within her discretion and was not manifestly erroneous. La. Admin. C. 40:2157 C(5); Kennedy v. Johnny F. Smith Trucking, Inc., 94 0618 (La. App. 1 Cir. 3/3/95), 652 So.2d 526. This assignment of error is meritless.
Finally, Cox's second assignment of error argues that the WCJ erred by participating in an ex parte communication with defense counsel. Cox fails to offer one shred of evidence that such an event took place. Our independent review of the record fails to find any basis for the assertion that such an illegitimate communication occurred. This assignment of error is wholly without merit.

Conclusion
For the reasons set forth above, the judgment is affirmed at Roofing Supply's cost.
AFFIRMED.
NOTES
[1] On January 29, 2000, Cox's blood serum level was 7µg%. On May 4, 2000, his blood lead level was less than 5µg%, i.e., it was less than the lower limits of detection for the test. See, D-1 and D-2. Dr. McWilliams testified that "any levels under 15 are acceptable for adults" and that OSHA regulations allow a blood level of 40µg% before an employee is placed under special surveillance. (R., p. 226).