hBROWN, C.J.
Claimant, Lucille Young Mack, appeals a judgment rejecting her demand for workers’ compensation benefits. For the reasons expressed, we affirm.

Facts

Mrs. Mack began employment with Cer-ro Copper Tube & Constitution State Services Company (“Cerro”) in November of 1983. Her job included fastening and in-fixing insulation into copper tubing on the assembly line; this job was recognized as a “rabbit operator” position. At some unspecified time, she moved to an “insert-er/packer” position. On April 15, 1999, Mrs. Mack was diagnosed with Carpal Tunnel Syndrome (“CTS”) in both hands. Cerro began paying workers’ compensation benefits to Mrs. Mack shortly after this diagnosis.[1] On September 24, 1999, Mrs. Mack underwent CTS release surgery on her left hand; on October 27, 1999, she underwent the same surgery on her right hand. Dr. William Webb, an orthopedic surgeon, performed both of these surgical procedures. Post-surgical diagnostic studies revealed improvement to her right hand, but there has been no improvement in her left hand.
Dr. Webb opined that Mrs. Mack could return to work full time in January 2000, with no restrictions. She first returned to work on January 9, 2000, but four days *1007 later sought medical attention from Dr. Webb complaining of pain in her arms. Although he did not find any abnormalities in his clinical evaluation, Dr. Webb ordered another ^diagnostic study. This study confirmed that the CTS had improved in her right hand but not in her left hand.
On January 19, 2000, Mrs.'Mack sought a second opinion from Dr. Michael Acurio, another orthopedic surgeon. At trial, Mrs. Mack testified that she went to see Dr. Acurio for a second opinion after Dr. Webb had cleared her to return to work without restrictions. Dr. Acurio treated her for a few months and ultimately concluded that she had reached maximum medical improvement. During this time, Mrs. Mack continued to see Dr. Webb, who prescribed occupational therapy.
After undergoing occupational therapy, Mrs. Mack’s therapist, Paul Procell, and Dr. Webb agreed that she could return to work with restrictions; these restrictions limited frequent grasping or pulling as well as lifting or carrying anything over 20 pounds. Mrs. Mack returned to work for a second time on May 25, 2000, with the above referenced restrictions and on light-duty. She worked only four hours and was sent home the same day.
At this point, Cerro retained Alice Rogers-Bond, a licensed vocational rehabilitation consultant. After evaluating different positions at Cerro, Ms. Bond believed that the inserter/packer position fell within the work restrictions prescribed by Mrs. Mack’s physician. An inserter/packer places (already) rolled-up coil tubes of liquid and suction lines into boxes on the assembly line. Ms. Bond prepared a videotape of this particular job and on September 13, 2000, met with Mrs. Mack and Dr. Webb. After reviewing the videotape, Dr. Webb agreed that Mrs. Mack was capable of performing this job, but recommended that she work only a half day for the 1 ¡¿first two weeks. Dr. Acurio also reviewed the video and concurred that Mrs. Mack could return to work in this position.
On October 5, 2000, Cerro offered Mrs. Mack the position of inserter/packer and she agreed to the proposed job. Her third and final attempt to return to work took place on October 12, 2000. She only stayed at work for an hour and a half that day. The next day, she saw Dr. Webb and complained that the work caused substantial pain. Although finding no objective physical changes, he accepted Mrs. Mack’s statements and agreed that she was unable to work at Cerro in any capacity. On December 14, 2000, Cerro offered her the position again, specifying that her salary would be what she was earning prior to her occupational disease, $11.34 per hour.
Ultimately, Cerro discontinued paying workers’ compensation benefits to Mrs. Mack on January 2, 2001. On February 13, 2001, she filed the instant disputed workers’ compensation claim because her benefits had been terminated. Mrs. Mack sought indemnity benefits from January 2, 2001, as well as penalties and attorney fees.
On January 10, 2002, the Workers’ Compensation Judge (“WCJ”) appointed Dr. Edwin Simonton, an orthopedic surgeon, to perform an Independent Medical Examination (“IME”). He found that Mrs. Mack had fully recovered from her operations and was capable of returning to work. Dr. Simonton also reviewed the video of the inserter/packer position and found it suitable for Mrs. Mack.
| ¿Trial of this matter was held on August 30, 2002. Claimant represented herself *1008 throughout the proceedings.[2] The WCJ denied Mrs. Mack’s claim for benefits, penalties, and attorney fees on October 18, 2002. It is from this judgment that she has appealed.

Discussion

The sole issue before this court is whether the WCJ was manifestly erroneous in finding that claimant failed to prove by clear and convincing evidence that she was unable to do the job offered by Cerro.

Standard of Review

The findings of the WCJ will be affirmed unless the judgment is manifestly erroneous. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. When the judgment is based on a credibility call, great deference must be given to the WCJ’s findings. A credibility call may be reversed only when documents or objective evidence so contradict the story of the witness, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit it. In the absence of such a showing, the WCJ’s choice between two permissible views of the evidence will not be disturbed. Rosell v. ESCO, 549 So.2d 840 (La.1989); Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.03/04/98), 708 So.2d 375; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Jones v. Ruskin Mfg., 36,548 (La.App.2d Cir.12/11/02), 834 So.2d 1126; Cox v. Roofing Supply, Inc., 36,275 (La.App.2d Cir.08/14/02), 825 So.2d 1271.

Temporary Total Disability Benefits

Compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence her inability to engage in any employment or self-employment. La. R.S. 23:1221(1)(a). McNeal v. Massman Construction, Co., 98-1792 (La.App.3d Cir.05/05/99), 738 So.2d 602, writ denied, 99-2157 (La.11/05/99), 750 So.2d 974.
In this case, Mrs. Mack has failed to establish that she was physically incapable of performing any employment. The medical evidence indicates her ability to work with restrictions. The WCJ was not manifestly wrong.

Supplemental Earnings Benefits

Supplemental Earnings Benefits (“SEB”) are defined in La. R.S. 23:1221(3)(a). The purpose of SEB is to compensate the injured employee for the wage earning capacity she has lost as a result of her injury. An employee is entitled to receive supplemental earnings benefits if she has sustained a work-related injury that results in her inability to earn 90% or more of her average pre-injury wage. The amount of SEB is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity. La. R.S. 23:1221(3)(a); Banks, supra; Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993).
|fiWhen an employee is offered and declines a job that she is physically able to do, the employee may still recover supplemental earnings benefits if she can prove by clear and convincing evidence that she can not perform the work offered because of substantial pain. La. R.S. 23:1221(3)(c)(ii).
In the instant case, what is disputed is whether Mrs. Mack is unable to return to work at Cerro as an inserter/packer on the assembly line because of substantial pain. *1009 Mrs. Mack contends that the video job description, which shows the inserter/packer position, inaccurately portrays the speed of the assembly line; she argues that the assembly line moves at a much swifter pace. Mrs. Mack also claims that the boxes which she would be required to handle are much larger.
We note that Mrs. Mack did not object to this videotape at the time she viewed it with Dr. Webb. Ms. Bond found the video accurately portrayed the inserter/packer job. In fact, there was not a single witness who expressed that the videotape falsely depicted the position, including Mrs. Mack’s own witness, Cien Desselle, who is employed as the quality auditor at Cerro.
Claimant argues that she is incapable of performing the modified position offered by Cerro because she is not “cured” yet. Mrs. Mack argues that she is in great pain and that her extreme pain impedes her ability to go back to work. She urges that Dr. Webb’s final opinion, stating that she could not work, should be followed and accepted by this court.
l7Pr. Webb stated that he based his decision that Mrs. Mack was unable to work at Cerro upon the belief that she had gone to work on October 12, 2000, tried to perform the job, but could not. He testified to the following:
Q: Did she (plaintiff) tell you what she had done during that hour and a half (when she was at work)?
A: No.
Q: Okay. Now, based upon her complaints to you, you changed your opinion from what you had indicated on Webb Number 1 (previous medical opinion and diagnosis) and took her off of work all together?
A: That’s true.
Q: And so I take it that the change of opinion was based solely on her saying that what she had done during that hour and a half had bothered her?
A: Yes.
Q: If her history had been she went to work and did pretty much nothing for an hour and a half and quit after an hour and a half, would that change your opinion?
A: Yes.
Q: How would it have changed your opinion?
A: You know, the reason I made this decision was it was my understanding that she went and she tried to do the job that I had released her to do, and that flared her symptoms right back up, at which point I said, well, there’s nothing else she can do.
In her deposition, Mrs. Mack testified that on that day, Cerro “didn’t let (her) do anything” for that hour and a half because, “[T]he line wasn’t really up when (she) was there” so she “was just standing there.” By contrast, claimant testified at trial that she was indeed performing boxing work and that the assembly line was in fact running.
Is As previously noted, upon conducting the IME, Dr. Simonton believed that Mrs. Mack was able to go back to work. Dr. Acurio agreed that Mrs. Mack was capable of performing the inserter/packer position. We recognize Mrs. Mack’s insistent complaints about pain. However, we note that she testified at trial that she can only drive with her left hand, which, according to all the medical evidence, is the hand that has not improved. The medical testimony of Drs. Simonton and Acurio and of the occupational therapist indicates that she is able to work in the offered position. Dr. Webb’s testimony is equivocal. We cannot say that the WCJ was manifestly wrong in *1010 not finding Mrs. Mack’s testimony credible.
In oral argument, Mrs. Mack asserted for the first time that her CTS resulted from working as an inserter/packer. We find this to be at odds with her testimony and history. She was in fact performing an inserter/packer’s job immediately prior to April 15, 1999, the date when she could no longer work. Nonetheless, at trial both parties stipulated that the inserter/packer position was not the same job which caused her CTS. In fact, on five occasions at trial, claimant stated that the insert-er/packer job was not the same job which caused her to incur CTS.[3] As previously observed, Mrs. 19Mack was a rabbit operator at Cerro prior to working as an insert-er/packer. Her job as a rabbit operator entailed inserting insulation into copper tubing on the assembly line. While questioning Mr. Desselle at trial, she argued that “the liquid line (was) too small on both ends to plug.” She indicated that the performance of this job, i.e., her position as rabbit operator, and not that of the insert-er/packer job, caused the CTS.
The WCJ made a credibility call which was reasonable in light of the totality of the evidence, both lay and medical. See Banks, supra; Anthony v. BE & K Construction, 32,729 (La.App.2d Cir.05/10/00), 760 So.2d 608, writ denied, 00-1673 (La.09/15/00), 768 So.2d 1280. The position offered to claimant would have enabled her to earn 90% or more of her pre-injury wage. See La. R.S. 23:1221(3)(a). Accordingly, we defer to the trier-of-fact’s reasonable conclusion that claimant is able to return to work and is not entitled to workers’ compensation benefits.

Conclusion

For the foregoing reasons, the judgment of the WCJ in favor of defendant, Cerro Copper Tube & Constitution State Services Company and against claimant, Lucille Young Mack, is AFFIRMED.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, C.J., WILLIAMS, STEWART, PEATROSS, and DREW, JJ.
Rehearing denied.

. At this time, her average weekly wage was $519.79 and her weekly compensation rate was $346.53.

. Mrs. Mack was previously represented by two different law firms. Ultimately, however, both attorneys filed motions to withdraw as her counsel.

. 1) Mrs. Mack: [T]his is complaints of how I got carpal tunnel which is not on this job that you all just saw. (Referring to the videotaped job description). R., p. 150, lines 5-7.
2) Mrs. Mack: The relevance is that I got carpal tunnel but I did not get carpal tunnel by doing the job that is depicted on the video. (Emphasis added). I did not get it doing that job. (Video shows the inserter/packer position.) R., p. 150, lines 15-18.
3) Mrs. Mack: That caused me to have carpal tunnel. That job (inserter/packer position) didn't. The job that I had before (it) did. It got worse on that job.
The Court: Okay. I believe defense counsel stipulated that that was not — the job on the video is not the job that caused you to get carpal tunnel.
Mrs. Mack: Yes ma'am. R., p. 151, lines 18-24.
4) Mrs. Mack: [TJhat’s not the way I got carpal tunnel. (Referring to inserter/packer job again). R., p. 158, In. 17.
5) Mrs. Mack: The only thing I'm trying to see, Your Honor, only thing I'm trying to do is show you all that that job (inserter/packer position) didn't give me carpal tunnel. R., p. 159, lines 7-9.
It was an earlier job that could have been helped by the company. R., p. 159, lines 13-14.